### In Matter of David H. KNOBEL.

### No. 45S00–9407–DI–672.

Supreme Court of Indiana.

Oct. 2, 1998.

---

No appearance for Respondent.

Donald R. Lundberg, Executive Secretary, Dennis McKinney, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

Because he abandoned his law practice without taking efforts to protect his client's interests, return to them unearned fees, or even advise them that he would no longer handle their legal affairs, we conclude today that the respondent, David H. Knobel,[1] should be suspended from the practice of law in this state.

This attorney disciplinary action is now before this Court for final resolution following submission of findings of fact and conclusions of law by the hearing officer appointed by this Court to hear the underlying complaint. The hearing officer found that the respondent violated the *Rules of Professional Conduct for Attorneys at Law* as charged in five of the seven counts in the Disciplinary Commission's *Amended Verified Complaint for Disciplinary Action.*[2] The respondent did not appear at any portion of the proceedings in this matter. He has been suspended from the practice of law pending final determination in this case pursuant to the Commission's pre-trial motion for *pendente lite* suspension, which this Court grant-

---

1. The respondent was admitted to the bar of this state in 1983. His admission to practice confers with us disciplinary jurisdiction in this case.

2. The Commission did not present evidence as to the other two counts.

ed upon the hearing officer's recommendation on September 22, 1997. Neither the Commission nor the respondent has petitioned for review of the hearing officer's report. Where that report is unchallenged, this Court accepts and adopts the findings of fact included therein, reserving final judgment as to misconduct and sanction. *Matter of Kingma–Piper*, 640 N.E.2d 1060 (Ind. 1994).

Within that review context, we now find that, under Count I, in January 1992 a husband and wife (the "clients") hired the respondent to pursue a "lemon law" claim and signed a written fee agreement. The couple paid the respondent a retainer of $750, which was to be held in trust and billed against by the respondent for work performed with the clients to be furnished with monthly billing statements. The respondent investigated his clients' case and concluded that Indiana's lemon law was inapplicable, but failed to notify the clients of his conclusion. On March 16, 1992, the clients received what later proved to be their only billing statement from the respondent, reflecting a $675 credit remaining from the retainer. Between January and August 1992, the clients attempted to contact the respondent to learn the status of their case. They were successful on only a few occasions and each time the respondent falsely informed them that he would send a status report. The clients discharged him as their attorney in May 1993. Despite a contrary assurance to his clients, the respondent never provided them with a final billing statement or return of the unearned fee.

Under Count II, we find that in January 1995, the respondent was hired to represent a client in another lemon law claim against the manufacturers of the client's automobile. The client paid the respondent a $750 retainer. The client retained the respondent in February 1995 to represent her in regard to a child support modification and paid an additional $750 retainer. Despite the client's assertion that she did not want formal action initiated, the respondent filed a child support modification petition on October 1995. He failed to take formal action on the client's lemon law claim. After October 1995, the client was unable to establish communication with the respondent despite numerous attempts, including a February 1996 letter discharging the respondent and requesting refund of unearned fees.

Under Count III, we find that a client hired the respondent on March 24, 1995, to handle certain post-dissolution matters. The client signed a written fee agreement which provided that the client would maintain a minimum trust balance of $1,000 against which the respondent would bill for services and generate for the client billing statements. The client initially paid the respondent $500 to be placed in trust. The respondent instructed her to make additional payments to maintain the trust balance. Between March 1995 and January 30, 1996, the client paid the respondent a total of $6,437 which the respondent did not deposit in the trust account. Instead, he negotiated the checks and kept the money for his own personal use. On February 26, 1996, the respondent telephoned the client and informed her that he would not be in attendance at a hearing scheduled for the next day, February 27, and informed her to personally request a continuance. The court ultimately denied the request. Thereafter, the respondent failed to communicate with his client, did not return case file materials to which the client was entitled, failed to formally withdraw from the case, and failed to return unearned fees.

Under Count VI, we find that a client hired the respondent in November 1995 to handle a marriage dissolution. He and the client signed a written fee agreement that provided that the client was to maintain a trust account with a minimum balance of $250 against which the respondent would bill for services, sending monthly statements to the client. The client initially provided $850 for the account and thereafter and had no further contact with the respondent despite repeated attempts to contact him. The respondent failed to take action pursuant to the representation, never returned the client's case file materials, and failed to refund unearned fees.

As to Count VII, we find that in January 1996 a client hired the respondent to handle an emancipation case involving the client's daughter, paying the respondent $500 in ad-

vance for contemplated services. Thereafter, the client was unable to contact the respondent despite repeated efforts. On May 7, 1996, the client wrote to the respondent requesting that he return both his file and fee. The respondent did neither. The client hired substitute counsel who also requested from the respondent case file materials. Instead of returning the materials to the client or his new attorney, the respondent forwarded them to another attorney without the client's consent. The respondent's inaction on the client's case resulted in additional support obligations being incurred by the client.

We find that the respondent violated Ind.Professional Conduct Rule 1.4(a) by failing to keep his clients informed about the status of their actions and by failing to respond to their requests for information.[3] By failing to explain the status of his clients' representations to them so that they could make informed decisions, the respondent violated Prof.Cond.R. 1.4(b).[4] By failing to act with reasonable diligence and promptness in representing his clients, the respondent violated Prof.Cond.R. 1.3.[5] By simply abandoning representation of his clients without taking steps to protect their interests and by failing to return unearned portions of the fees they paid, the respondent violated Prof. Cond.R. 1.16(d).[6] By failing to hold all client funds, including advance payment of costs and fees, separate from his own, the respondent violated Prof.Cond.R. 1.15(a).[7] His use of funds belonging to clients for purposes unrelated to those clients constitutes a criminal act, conversion, which reflects adversely on his honesty, trustworthiness, and fitness as a lawyer in other respects and thus violated Prof.Cond.R. 8.4(b).[8]

Having found misconduct, we now turn to the issue of proper discipline. In assessing an appropriate disciplinary sanction, we examine the surrounding circumstances, the lawyer's state of mind, the duty violated, any actual or potential injury to client, our duty to preserve the integrity of the profession, the risk to the public by allowing the lawyer to continue in practice, and any mitigating or aggravating factors. *Matter of Miller,* 678 N.E.2d 1117 (Ind.1997). We find aggravating the respondent's misconduct his outright abandonment of his clients' cases without provision for protection of their interests. Unearned fees and case file materials remained with the respondent despite client protestations. Even before the representations ended, the respondent failed to adequately protect his clients' interests by failing to place pre-paid retainers in trust per written agreements with clients and, most troubling of all, using their funds for purposes not related to their actions. His misconduct was not isolated but rather a pattern strongly suggestive of the respondent's incapability of carrying out the duties, functions, and trusts legal representation of others entails. His actions not only damaged individual client interests but also demonstrate his unfitness for the responsibilities of the legal profession. We therefore are convinced that he should be suspended from the practice of law with any future eligibility for readmission

---

3. Indiana Professional Conduct Rule 1.4(a) provides:
   A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

4. Professional Conduct Rule 1.4(b) provides:
   A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

5. Professional Conduct Rule 1.3 provides:
   A lawyer shall act with reasonable diligence and promptness in representing clients.

6. Professional Conduct Rule 1.16(d) provides, in relevant part:
   (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as

giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property which the client is entitled and refunding any advance payment of fee that has not been earned.

7. Professional Conduct Rule 1.15(a) provides, in relevant part:
   (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

8. Professional Conduct Rule 8.4(b) provides that it is professional misconduct for a lawyer to commit a criminal act which reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects.

to be made contingent upon a substantial passage of time and the respondent's demonstrating his fitness.

It is, therefore, ordered that respondent, David H. Knobel, is hereby suspended from the practice of law in this state for a period of not less than three (3) years, beginning November 13, 1998, at the conclusion of which he shall be eligible for reinstatement provided he can meet the criteria set forth in Ind.Admission and Discipline Rule 23.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.