In the Matter of David
J. PUTERBAUGH.

No. 30S00–9803–DI–159.

Supreme Court of Indiana.

Oct. 7, 1999.

No appearance for the Respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, In-dianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

The respondent[1] in this disciplinary action consented to *pendente lite* suspension beginning September 23, 1998, amid allegations that he, *inter alia,* informed his client that he had settled a lawsuit on the client's behalf when in fact the respondent had taken no action and obtained no settlement. Those allegations are now before this Court for final judgment.

■ This case comes to us upon the duly appointed hearing officer's findings of fact and conclusions of law, tendered pursuant to Ind.Admission and Discipline Rule 23(14)(f). The hearing officer, following evidentiary hearing at which the respondent failed to appear, concluded that the respondent engaged in misconduct as charged and recommended that he be suspended for a period of not less than 18 months. Neither the respondent nor the Disciplinary Commission petitioned this Court for review of those findings or conclusions, and, that being the case, we accept and adopt the factual findings, but reserve final judgment as to misconduct and sanction. *Matter of Lamb,* 686 N.E.2d 113 (Ind.1997).

■ We now find that, beginning in 1992, the respondent represented a client who sought adjustment to his worker's compensation benefits after he reinjured his kneecap. On November 30, 1993, the Worker's Compensation Board denied the client's August 1992 application for benefits. The client then hired the respondent to bring a medical malpractice action against the surgeon who treated the client's initial 1991 injury to his kneecap and who had subsequently released him to

1. David J. Puterbaugh was admitted to the bar of this state in 1974 and is therefore subject to this Court's disciplinary authority.

return to work. The respondent and the client agreed that the respondent's fee for the representation would be ten percent of any gross recovery, but no written fee agreement was prepared. Several months later, the respondent informed his client of a successful recovery on the malpractice claim, and, on February 8, 1996, presented the client with a check for $5,028.75 as partial payment of medical bills. The check was drawn on the respondent's "Attorney at Law" account, but bore no explanation on the memo line. The respondent showed his client a written breakdown of various medical bills related to the payment. The respondent also advised his client that he had obtained for him a total settlement of $60,000 for remaining medical expenses, future pain and suffering, and partial disability. The respondent had never consulted with the client about the settlement amount or even if, in fact, the client desired to settle.

About a month later, the respondent presented to the client a second check, this one for $8,070, proclaiming it to be for lost wages. It, too, was drawn on the respondent's "Attorney at Law" account with no memo line explanation. Following receipt of this check, the client began leaving telephone messages for the respondent and requested that he return the calls. The respondent failed to do so. On April 1, 1996, the respondent and the client met by chance on a city street in Richmond, Indiana. During this meeting, the respondent told his client that other settlement proceeds would arrive within the next week to ten days. After that meeting, the client neither spoke to nor heard from the respondent, despite the client's persistent efforts to reach him. At the hearing of this disciplinary case, the client estimated that out of about 60 scheduled meetings he had with the respondent during the four and one-half years he represented him, the respondent canceled about 50 at the last minute, usually after the client had trav-

eled to the appointment site. On June 11, 1997, the client mailed a certified letter to the respondent terminating his representation of him and requesting return of case file materials, which the respondent made available on July 25, 1997. The respondent had never contacted the surgeon who treated the client and had never filed a complaint or any other pleading with any entity to initiate the medical malpractice action. The $13,098.75, which the respondent paid to the client, was in fact not settlement proceeds but instead money drawn from the respondent's personal funds.

On August 19, 1997, while investigating the grievance underlying this case, the Commission asked the respondent for a written response, and, after receiving none, renewed its request on October 6, 1997. On October 29, 1997, the respondent submitted a one-page response in which he discussed the client's worker's compensation claim but failed to address issues regarding the contemplated medical malpractice claim.

Indiana Professional Conduct Rule 1.2(a) requires that lawyers abide by their clients' decisions concerning the objectives of representation. Professional Conduct Rule 1.3 requires that lawyers act with reasonable diligence and promptness in representing clients. The respondent failed to satisfy the requirements of either rule when he failed to initiate the medical malpractice action as requested by his client.

Professional Conduct Rule 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. The respondent failed to keep his client informed in any meaningful way about the true status of his contemplated action, and failed to comply with dozens of reasonable requests for information about the represen-

tation. Professional Conduct Rule 1.4(b) requires a lawyer to explain matters to a client to the extent reasonably necessary to permit the client to make informed decisions about the representation. The respondent provided his client with no genuine information of any use or value, and thus denied him the ability to make any decision whatsoever regarding the representation. In light of this, we conclude that the respondent violated Ind.Professional Conduct Rule 1.4.

Professional Conduct Rule 1.5(c) requires that contingency fee agreements be in writing. The respondent never reduced his contingency fee agreement with his client to writing and therefore violated the rule.

Professional Conduct Rule 8.1(b) provides that a lawyer shall not knowingly fail to respond to a lawful demand for information in connection with a disciplinary matter. The respondent first failed to respond at all to the Commission's first request for information, then provided a completely unresponsive reply to the second. We find that both actions violated Prof.Cond.R. 8.1(b).

Pursuant to Prof.Cond.R. 8.4(c), it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. The respondent falsely informed his client that a $60,000 settlement had been obtained when that was untrue, then perpetuated the ruse by paying to his client bogus "settlement" proceeds. These acts violated Prof.Cond.R. 8.4(c).

Having found misconduct, we now turn to deciding upon proper discipline. The respondent's intentional deception of his client as to the status of the representation and the great lengths to which the respondent went to perpetuate the deception of his client are reprehensible. In that regard, we note that his present misconduct is almost identical to that underlying his past disciplinary problems. *Matter of Puterbaugh*, 694 N.E.2d 281 (Ind.1998) (60 day suspension for failure to prosecute a case on behalf of a client, then falsely advising the client that the case was progressing and paying the client $500 in bogus "settlement" proceeds). Accordingly, we now find that a more lengthy suspension is warranted and thus adopt the recommendation of the hearing officer, including the requirement that the respondent demonstrate to this Court his fitness to practice before being readmitted.

It is, therefore, ordered that the respondent, David J. Puterbaugh, be suspended from the practice of law in this state, beginning September 23, 1998, for a period of not less than 18 months. At the conclusion of that period, he may petition this Court for reinstatement to the bar of this state, provided he can satisfy the requirements of Admis.Disc.R. 23(4).

The clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc. R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of each United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the clerk.

Costs of this proceeding are assessed against the respondent.