**In the Matter of Michael C. KENDALL, Respondent.**

No. 49S00–0009–DI–561.

Supreme Court of Indiana.

March 24, 2004.

Michael Kendall, Indianapolis, IN, Attorneys for Respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, Indianapolis, IN, Attorneys for Disciplinary Commission.

## DISCIPLINARY ACTION.

DICKSON, Justice.

Among the matters to be clarified in this case are two questions important to many practicing Indiana lawyers. First, when a lawyer receives a payment for legal services to be rendered in the future, must the lawyer hold the funds in a trust account until earned? Second, may the lawyer's fee contract specify that all or a portion of a preliminary (or advanced) fee is nonrefundable?

These questions arise from the following scenario. The respondent required certain clients to pre-pay him a portion of his fees before he performed any legal services. These arrangements were set forth in contracts between the respondent and these clients that provided for the advance fee payments and specified that the advance fee payments were "nonrefundable." Notwithstanding this nonrefundability provision in the contracts, it was the respondent's intention and practice to refund any unearned portion of the advance fee payments. That is, even though the contracts stated that the advance fee payments were "nonrefundable," they were in fact refundable. In the interim, the advance fee payments were deposited in the respondent's law firm operating account. Subsequent to the execution of the contracts and deposit of the advance fee payments in his law firm operating account, the respondent and his law firm were placed in bankruptcy. As a consequence of the bankruptcy, the respondent was unable to refund unearned advance fee payments when several clients who had paid them terminated the respondent's legal representation. Additional facts will be provided as required.

The Disciplinary Commission charged the respondent with seven counts alleging numerous violations of the Indiana Rules of Professional Conduct, but it later dismissed Count V. Each of the remaining six counts alleged similar violations by the respondent with respect to six different clients. As to five of the clients, the Commission asserted that the respondent violated Rule 1.5(a) prohibiting unreasonable fees by charging nonrefundable retainers; that he violated Rule 1.15(a) by failing to keep the unearned portions of his initial retainers separate from his own property; and that he violated Rule 1.16(d) for not promptly returning unearned advance retainers upon termination of his services. With four of the clients, the Commission charged a violation of Rule 1.16(d) for not promptly returning unearned retainer funds upon termination of his services. It also charged that by not sending monthly billing statements to two of the clients as required by the attorney-client contracts, the respondent failed to keep two of the clients informed of the status of their cases in violation of Rule 1.4(a). As to one

client, the Commission charged that the respondent violated Rule 1.15(b) by failing to timely provide a full accounting regarding the advanced retainer payments when the client terminated the respondent's services.

Following a hearing on the merits,[1] the hearing officer concluded that the respondent's conduct violated Rule 1.4(a) (failure to keep clients reasonably informed), Rule 1.15(b) (failing to render a prompt accounting), and Rule 1.16(d) (failing to promptly refund fees after termination of representation). But the hearing officer found that the evidence did not prove the charged violations of Rule 1.5(a) (charging an unreasonable fee) and Rule 1.15(a) (failing to segregate client and attorney funds). The Disciplinary Commission petitions for review the hearing officer's conclusions regarding Rule 1.15(a) and Rule 1.5(a). The respondent does not challenge the hearing officer's findings or conclusions, but he opposes the Disciplinary Commission's petition for review.

Where a hearing officer's disciplinary findings are unchallenged, it has been the practice of this Court to accept and approve the findings subject to our final determination as to misconduct and sanction. *In re Williams*, 764 N.E.2d 613, 614 (Ind. 2002); *In re Puterbaugh*, 716 N.E.2d 1287, 1288 (Ind.1999); *Matter of Grimm*, 674 N.E.2d 551, 552 (Ind.1996). We therefore approve and adopt the hearing officer's conclusions that the respondent's conduct violated Rules 1.4(a), 1.15(b), and Rule 1.16(d).

We turn to address the Disciplinary Commission's challenge to the hearing officer's conclusions regarding Rules 1.15(a) and 1.5(a), which centers upon a single principal issue: how should Indiana lawyers handle fees paid in advance for legal

services to be rendered? The Commission contends that client fee deposits to be earned in the future on an hourly fee basis must be held in trust until earned. The respondent contends that there is no requirement to segregate in special trust accounts retainers or attorney fees charged in advance for the performance of legal services. The hearing officer observed:

> [R]equiring that advance fees of all kinds be put in trust is not a simple issue for the profession. Criminal, divorce, employment, contract and many other areas of day to day practice justify retainers for many reasons. Ruling here that all of those fees must go to trust accounts without seeking input from the bar should be avoided. Such a change is too fundamental and demands a thorough impact study be conducted. To leave the lawyers out of that complex analysis would ... invite mistakes, oversights and justifiable criticism.

Findings of Fact, Conclusions of Law and Recommendation at 23–24.

### Professional Conduct Rule 1.15(a)

■ Advance fee payments are subject to different requirements, depending upon the terms of the agreement between the lawyer and the client. This discussion will distinguish between the advance fees charged by the respondent here (that were to be earned in the future at an agreed rate) and advance fees that are agreed to cover specific legal services regardless of length or complexity (fixed or "flat" fees).

In relevant part, Rule 1.15(a) states: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."

---

**1.** The respondent was represented by counsel during the proceedings before the hearing officer, but is acting *pro se* in responding to the Commission's petition for review.

The Commission argues that the respondent violated Rule 1.15(a) because he used his clients' "advance fee payments as unrestricted revenues to his law practice rather than placing them in trust until he had earned them at the hourly rate specified in his fee contracts." Disciplinary Commission's Brief in Support of Petition for Review at 4. Noting that the word "retainer" may have an imprecise meaning, the Commission describes the advance client payments as "deposits to secure the payment of fees to be earned in the future at an agreed hourly rate." *Id.* at 5–6. Citing the obligation of a lawyer to refund the unearned portion of a fee under Rule 1.16(d), the Commission argues that nonrefundable retainers are *per se* unenforceable because "[u]nless a lawyer is required to hold unearned fee deposits in trust, the obligation imposed by Rule 1.16(d)[2] is meaningless in the very cases [where a lawyer has no available cash] where clients need the most protection." *Id.* at 8 (footnote added). The Commission argues that Rule 1.15(a) requires advance fees to be placed in trust until earned because, until earned, it is the client's money; that this interpretation is supported by sound policy concerns protecting the freedom of a client to discharge a lawyer and hire a new one; that its interpretation is consistent with precedent; and that it is supported by case law and authorities from other juris-

dictions. The Commission also urges that an attorney's fee agreement is unreasonable under Rule 1.5 when it includes a provision that an advance fee payment will be non-refundable.

The hearing officer found, because of "significant and controlling language" in *Matter of Stanton,* 504 N.E.2d 1 (Ind. 1987), that there was no requirement to segregate advance fees between trust and operating accounts, that it was reasonable for the respondent to conduct his law practice accordingly, and that "it would be patently unfair" to find that the respondent had violated Rule 1.15(a). The hearing officer also declined to find that the respondent, by characterizing the fee as "a non-refundable retainer," charged an unreasonable fee under Rule 1.5.

In *Stanton,* this Court granted rehearing to clarify "the ethical requirements applicable in instances where an attorney receives a flat fee in advance of performing the legal services." 504 N.E.2d at 1.[3] Noting the apparent confusion as to the relationship of the attorney disciplinary rules that require segregating and accounting of client funds in connection with the rules requiring the refund of unearned fees paid in advance, we declared:

> The above noted segregation of funds and accounting requirements *are not ap-*

2. Ind. Prof. Cond. R. 1.16(d) provides:
   Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and *refunding any advance payment of fee that has not been earned.*
   (emphasis added.)

3. In our earlier *per curiam* opinion in the same case, this Court had disciplined the respondent for a variety of misconduct and noted that he routinely charged and received

substantial fees in advance, refused and failed to render any account of his services, or failed to refund any of the unearned fees. *Matter of Stanton,* 492 N.E.2d 1056, 1063 (Ind.1986). In that opinion, however, we expressly declined to address the Commission's contention that the disciplinary rules regarding segregation and accounting require that flat fees paid in advance for criminal defense work must be deposited in a separate trust account until earned, noting that the Commission's complaint against the respondent did not actually charge him with violating these rules. *Id.* at 1062.

*plicable to attorney fees charged in advance for the performance of legal services.* As noted in our prior opinion, Disciplinary Rule 2–109(A)(3) (Now Rule 1.16(D)) merely provides that upon termination of the professional relationship, unearned fees paid in advance must be returned. There is no requirement to segregate funds and the record keeping requirements mandated under this provision are limited to that which is necessary to fulfill this obligation.

*Stanton,* 504 N.E.2d at 1 (emphasis added).[4]

Eleven years later, however, in *Matter of Knobel,* 699 N.E.2d 1142 (Ind.1998), this Court did not apply the *Stanton* holding that the segregation of funds is not required for advanced attorney fees. In *Knobel* the client initially paid the respondent $500 in advance for contemplated services in an emancipation case involving the client's daughter, but then discharged him. We held that the respondent violated Prof. Cond. R. 1.15(a) by "failing to hold all client funds, including advance payment of costs and fees, separate from his own." *Id.* at 1145. Similar language is found in *In re McCarty,* 729 N.E.2d 98 (Ind.2000), in which this Court disciplined an attorney who received an advance of $100 for a filing fee and $200 that was to go toward the attorney fees for representing a client seeking a legal separation. Upon her failure to take meaningful action on behalf of her clients, the respondent was discharged, but she did not refund the $300 advanced, asserting that she did not have the money. We stated:

Professional Conduct Rule 1.15(a) requires that lawyers hold the property of clients separate from their own. Client funds in a lawyer's possession in connection with a proceeding are to be kept in a separate account. The respondent failed to maintain her client funds [in] an appropriate account as required and thus violated the rule.

*Id.* at 99.

The Commission states that it is not asking this Court to overturn *Stanton,* but to distinguish it from the present case. Disciplinary Commission's Reply Brief at 1. Emphasizing that *Stanton* involved flat fees in criminal cases, the Commission argues that *Stanton* did not "address the question presented in this case: whether client fee deposits to be earned in the future on an hourly fee basis must be held in trust until earned." Disciplinary Commission's Brief in Support of Petition for Review at 12–13. During oral argument, the Commission again acknowledged that the holding of *Stanton* is that flat fees do not have to be deposited in a trust account and that "we're not here to argue that *Stanton* ought to be overturned."

The respondent argues that *Stanton* is not limited to flat fees but generally authorizes Indiana attorneys to place all unearned retainers in an operating account, and that "no attorney could have possibly been put on notice to do otherwise." Respondent's Brief in Opposition to Commission's Petition for Review at 14. He further urges that any action by this Court to overrule or distinguish *Stanton* be undertaken only as part of our rulemaking pro-

---

4. Stanton was charged under our former Indiana Code of Professional Responsibility. The segregation requirements of its Disciplinary Rule 9–102(A) and the accounting requirements of its Disciplinary Rule 9–102(B) were substantially similar to its those contained in its successor, the present Indiana Professional Conduct Rule 1.15. Likewise, the requirement of a prompt refund of any unearned portion of a fee paid in advance if a lawyer withdraws from employment was substantially similar to the present Prof. Cond. R. 1.16(d).

cess, with extensive input from the public and the bar, rather than in this case.

. While *Stanton* generally stated that the segregation of funds and accounting requirements are not applicable to advanced attorney fees, it did so only in the context of granting rehearing expressly to clarify the ethical requirements as to the treatment of *flat* fees. 504 N.E.2d at 1. One commentator describes the term "flat fee" as embracing "all work to be done, whether it be relatively simple and of short duration, or complex and protracted." Alec Rothrock, *The Forgotten Flat Fee: Whose Money Is It And Where Should It Be Deposited?* 1 Fla. Coastal L.J. 293, 299 (1999) (hereinafter Rothrock, *Forgotten Flat Fee*). As distinguished from a partial initial payment to be applied to fees for future legal services, a flat fee is a fixed fee that an attorney charges for all legal services in a particular matter, or for a particular discrete component of legal services.

Based upon a survey conducted in 2002, the ABA Commission on Billable Hours reports that fixed or flat fees are being used by 89% of solo practitioners, 63% of law firms with two to fifteen lawyers, and 54% of firms with sixteen to fifty lawyers. ABA Commission on Billable Hours Report 2001–2002, at 16. This study found that such fees were used most often for transactional work (51%), but also for litigation (23%) and criminal (9%) matters. *Id.* The advantages of flat fees are recognized and their use promoted:

> Flat fees should be encouraged, not discouraged. For clients who cannot or prefer not to engage in a contingent fee arrangement, they eliminate the uncertainty, anxiety and surprise often found with hourly rates, especially in protracted litigation, which almost always costs more, often much more, than anticipated. They enable corporate clients to better control their budgets. For attorneys, flat fees reward efficiency and enable the attorney to concentrate on the representation instead of fighting with the client over monthly bills. They also provide certainty of payment as opposed to the potential of none in the contingent fee context.

Rothrock, *Forgotten Flat Fee*, at 354 (included references omitted). The same author also notes that flat fees in litigation matters "clearly present a risk to both the attorney and the client that the work actually required on the matter will differ from their expectations, but their benefits far outweigh their potential abuses." *Id.* at 355.

Although there is considerable variation among other jurisdictions, a significant number have found, as we did in *Stanton,* that flat fees need not be segregated from an attorney's operating expenses. The majority of jurisdictions have held that flat fees may, with the consent of the client, be considered to be earned upon receipt and therefore not required to be placed in a trust account. *See* Rothrock, *Forgotten Flat Fee*, at 300. Different jurisdictions have adopted varying rationales in coming to this conclusion. Some hold that flat fees are not "funds of clients" in that they have been knowingly paid to the attorney by the client. *See id.* at 300–02; District of Columbia Legal Ethics Comm., Op. 113 (1982) (holding that flat fees are fee advances which, like other types of prepayments, may be used immediately because they are important parts of the cash flow necessary to operate the enterprise); 1985 WL 57057, *3 (N.Y.St.Bar.Assn.Comm. Prof.Eth.) (holding that flat fees should not be considered client funds because "when one pays in advance for services to be rendered ... ownership of the funds passes upon payment"). Alternatively, other jurisdictions have held that flat fees

may be considered earned upon receipt. *See* Rothrock, *Forgotten Flat Fee,* at 305–320; Arizona State Bar Ass'n, Op. 99–02 (1992) (holding that nonrefundable fees are ethical where by agreement with the client prepaid fees are earned upon receipt); FL Eth. Op. 93–2, 1993 WL 761327, * 4 (Fla. St. Bar Assn.) (holding that prepaid nonrefundable flat fees should not be placed in an trust account but be considered earned upon receipt); 1997 NC Eth. Op. 4, 1998 WL 716663, * 1 (N.C.St.Bar.) (holding that flat fees which are received at the beginning of representation are funds to which the attorney is immediately entitled and may be placed in his general account); VA LE Op. No. 1606 (1994) (holding that where the attorney-client agreement provided that a portion of the advance fee was to be considered earned at the time it was paid, that amount could be deposited in the attorney's general fund).

In both *Knobel* and *McCarty,* the advanced fees were not described as prepaid flat fees, but presumably were initial retainers to apply toward future legal services, the total fees for which were not determined in advance. Because it applies only to flat fees, *Stanton* is not inconsistent with *Knobel* and *McCarty.* We therefore hold that Prof. Cond. R. 1.15(a) generally requires the segregation of advance payments of attorney fees, as discussed below.[5] Because the advanced retainers in the various counts in the present case do not involve flat fees,[6] Prof. Conduct Rule 1.5(e) required that these advanced fees be held separate from the respondent's own funds.

The respondent does not challenge the hearing officer's findings that in each of the counts charging a violation of Prof. Cond. R. 1.15, the respondent received advance attorney fee payments that he deposited in his operating account rather than in a separate trust account. Except in the case of flat fees governed by *Stanton,* a lawyer's failure to place advance payments of attorney fees in a separate account violates this rule. *Knobel,* 699 N.E.2d at 1145; *McCarty,* 729 N.E.2d at 99. We therefore find that the respondent's charged conduct was contrary to Prof. Cond. R. 1.15(a).

### Professional Conduct Rule 1.5(a)

■ The Commission also challenges the hearing officer's conclusion that the evidence did not prove that the respondent charged an unreasonable fee in violation of Rule 1.5(a). The Commission does not claim that the respondent actually charged clients an unreasonable fee, but rather claims that the nonrefundability provisions in the respondent's fee contracts necessarily violated the first sentence of Rule 1.5(a) requiring that fees be reasonable. Rule 1.5(a) provides as follows:

A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

---

**5.** As discussed further below, this Court noted in *Matter of Thonert* that advance retainers may be justified by the value received by the client or detriment incurred by the attorney. 682 N.E.2d 522, 524 (Ind.1997).

**6.** The present case does not involve advanced retainers justified under the *Thonert* exception noted in the previous footnote and discussed below.

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

The respondent's fee contracts contained the language generally providing that advance retainers were not refundable "except as otherwise provided by law." Findings of Fact, Conclusions of Law and Recommendation at 13. The hearing officer found that the respondent "never charged a non-refundable retainer that applied if the client terminated the representation prior to the completion of the representation." *Id.* at 12. The hearing officer's conclusions of law included:

6. Neither the amount of the fee, nor the characterization of the fee as "a nonrefundable retainer" in the various employment cont[r]acts, made the fee unreasonable.

7. Even though there is a dispute as to whether the clients were informed as to the refundable nature of the retainer fee, none of the clients in question doubted that they had a right to the unearned portion. Further, by prior practice and by his actions hereunder, the Respondent demonstrated that it was his policy to refund unused portions of the retainer. There was no evidence that Respondent had ever actually charged and collected a non-refundable fee. The Commission has failed to establish by clear and convincing evidence

that the Respondent violated Rule 1.5(a) by charging an unreasonable fee.

*Id.* at 18.

The Commission argues that "it is unreasonable for a lawyer to incorporate into his fee agreement with his clients a provision for nonrefundability of advance fee payments even though the lawyer does not intend to and does not, in fact, insist on the enforcement of that provision upon termination of the attorney-client relationship." Disciplinary Commission's Brief in Support of Petition for Review at 24. Emphasizing the right of clients to terminate their attorneys' services before an advance fee has been earned, the Commission urges that attorney-client agreements declaring advance fees to be "nonrefundable" operate to chill this right, and should thus cause the fee to be unreasonable under Rule 1.5(a).

The Commission argues that this Court previously established that nonrefundability provisions are unreasonable in *Thonert*, 682 N.E.2d at 524. In *Thonert*, the respondent accepted the representation in a criminal matter upon a $4,500 "nonrefundable retainer" with the express understanding that there would be additional attorneys' fees and expenses depending on the nature of the work to be done. *Id.* The client's wife made an initial payment of $1,000, and signed a promissory note agreeing to pay $75 per week until the retainer was paid in full. Shortly thereafter, the client directed his wife to terminate the representation. Upon attempting to do so, the wife was told that her retainer was nonrefundable and that, should she terminate the representation, she would still be responsible for the unpaid balance of the promissory note. Thonert continued to represent the client in the criminal matters for about two months, and the wife made further payments totaling $450 until the client decided to change attorneys

and discharged Thonert, who withdrew, but did not promptly refund any of the advanced attorney fees.

Although Thonert was not charged with violating Prof. Cond. R. 1.5(a) requiring all fees to be reasonable, we stated that Thonert's "demand for a nonrefundable $4,500 fee irrespective of any termination of the respondent's employment was an unreasonable fee," *id.* at 524, and determined that his failure to promptly refund unearned fees after termination of representation violated Prof. Cond. R. 1.16(d). We further noted that Thonert's "attempted retention of $1,450 for the nominal service he provided to his client might have violated Prof. Cond. R. 1.5," had he been so charged. *Id.* at 525 n. 2. In discussing the nonrefundability provision, we observed:

> We do not hold that unrefundable retainers are *per se* unenforceable. There are many circumstances where, for example, preclusion of other representations or guaranteed priority of access to an attorney's advice may justify such an arrangement. But here there is no evidence of, for example, any value received by the client or detriment incurred by the attorney in return for the nonrefundable provision, other than relatively routine legal services.

682 N.E.2d at 524. Where a retainer is thus justified, a lawyer would be well advised to explicitly include the basis for such non-refundability in the attorney-client agreement.

As discussed above, except for flat fees, where an attorney accepts an advance payment for future legal services (and except for retainers justified by the value received by the client or detriment incurred by the attorney as noted in *Thonert*), these fees must be separately held until actually earned. Prof. Cond. R. 1.16(d) requires lawyers to promptly refund any unearned portion of such advanced fees. It is thus clear that such advance payment for future legal services cannot be nonrefundable. We hold that the assertion in an attorney fee agreement that such advance payment is nonrefundable violates the requirement of Prof. Cond. R. 1.5(a) that a lawyer's fee "shall be reasonable."

■ Where the advance payment is in the nature of a flat fee, however, or for a partial payment of a flat fee, it is not only reasonable but also advisable that the agreement expressly reflect the fact that such flat fee is not refundable except for failure to perform the agreed legal services. If the legal services covered by a flat fee are not provided as agreed, an attorney must refund any unearned fees. *Stanton,* 492 N.E.2d at 1061; *see also* Prof. Cond. R. 1.5(a), 1.16(d). Furthermore, regardless whether the attorney-client contract refers to the advanced fee "retainer" or "flat fee," it is the actual nature of the attorney-client relationship, not the label used, that will be determinative.

In the present case, Kendall's fee agreements with his various clients provided for the non-refundability of the retainer fee, but it was his standard practice to return all unearned fees upon receiving a notice of termination from a client. The hearing officer found that "none of the clients in question doubted that they had a right to the unearned portion" and "[t]here was no evidence that Respondent had ever actually charged and collected a non-refundable fee." Findings at 18. However, when Kendall filed for bankruptcy, the IRS placed a lien on his assets, including the retainers that had been advanced but not yet earned. Notwithstanding Kendall's intentions not to enforce the nonrefundability provisions, and the understanding of his clients, these provisions were unreasonable under Rule 1.5(a).

### Sanctions

 Having found that Kendall violated Rule 1.15(a) and 1.5(a), in addition to his violations of Rules 1.4(a) (failing to keep clients reasonably informed), Rule 1.15(b) (failing to render a prompt accounting), and Rule 1.16(d) (failing to promptly refund fees after termination of representation), as found by the hearing officer and not challenged by Kendall, we now determine the appropriate sanction to be imposed.

The hearing officer received significant evidence of Kendall's professional reputation. Several highly respected witnesses testified favorably for Kendall, praising his history of ethical practice, his integrity, his significant public service, and his strong dedication, care, and commitment to his clients' cases. The hearing officer recognized that Kendall "deserves sanction" but noted that the "accolades from..the various witnesses were impressive and unchallenged," and urged that "the penalty needs to be tempered by what seems to be the Respondent's superior ethical history until this recent period." Findings at 23.

Because of the unique circumstances of this case and the mitigating considerations urged by the hearing officer, we find that the appropriate sanction should be a public reprimand. It is therefore ordered that the respondent, Michael Kendall, is hereby reprimanded and admonished for the misconduct set forth herein.

The Clerk of this court is directed to provide notice of this order in accordance with Admission and Discipline Rule 23(3)(d) and the hearing officer in this matter, and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this State, and the Clerk of each of the United States Bankruptcy Courts in the state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.