ATTORNEY FOR THE RESPONDENT
Alfred E. McClure
Lafayette, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Secretary
Dennis K. McKinney, Staff Attorney
Indianapolis, Indiana

# In the
# Indiana Supreme Court



**FILED**

Feb 11 2011, 2:45 pm

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

No. 29S00-0902-DI-76

IN THE MATTER OF:

HEATHER MCCLURE O'FARRELL,

*Respondent.*

Attorney Discipline Action
Hearing Officer Kevin Barton, J.

**February 11, 2011**

**Per Curiam.**

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. The Respondent's 1995 admission to this state's bar subjects her to this Court's disciplinary jurisdiction. See IND. CONST. art. 7, § 4.

We find that Respondent, Heather McClure O'Farrell, engaged in attorney misconduct by making agreements for and charging unreasonable fees in violation of Indiana Professional Conduct Rule 1.5(a). For this misconduct, we find that Respondent should receive a public reprimand.

## Background

Respondent practices law as an attorney of McClure & O'Farrell, P.C. ("the Law Office"). The Law Office uses an "Hourly Fee Contract" or a "Flat Fee Contract" in most cases when it represents a party in a family law matter.[1] Both types of contract contain a provision for a nonrefundable "engagement fee." The Commission alleges Respondent improperly charged two clients nonrefundable engagement fees and did not refund unearned fees after the representations ended. The case was submitted to the hearing officer on the parties' stipulation of facts in lieu of an evidentiary hearing.

Count 1. On November 20, 2006, "Client 1" hired the Law Office to prepare and file for dissolution of her marriage, to represent her in the preliminary hearing in that case, and to obtain a protective order against Client 1's husband. The Law Office charged Client 1 a $3,000 engagement fee for the cases, plus $131 for filing fees, which Client 1 paid by credit card. Client 1 signed the Law Office's Flat Fee Contract, which contained the following provisions:

"[The] engagement fee is non-refundable and shall be deemed earned upon commencement of Attorney's work on the case[.]"

"Attorneys agree to credit any engagement fee received from Client toward the flat fee . . . . Said engagement fee shall be due and owing at the time of execution of this contract. Client agrees to make no demand for a refund or return of any part of the engagement fee owed or paid."

"In the event that the Client-Attorney relationship terminates prior to the completion of Attorneys' representation as described . . . above, Client and Attorneys agree Attorneys shall, at the Attorneys' sole discretion, be entitled to keep the engagement fee paid[.]"

Respondent filed a petition for dissolution of Client 1's marriage ("the Divorce Case") and a petition for a protective order ("the PO Case"). An Ex Parte Order for Protection was entered on November 22, 2006. On or about November 23, 2006, Client 1 asked her credit card

---

[1] We note that Respondent is represented in this action by another member of the Law Firm, who states that Respondent did not draft the contracts at issue.

company to chargeback her payment of $3,131 to the Law Office, which was done. The Law Office challenged the chargeback, and the credit card company eventually restored the payment of $3,131 to the Law Office.

On November 28, 2006, Respondent filed motions to withdraw as Client 1's attorney in the Divorce Case and in the PO Case. Both cases eventually were dismissed. The Law Office refused to refund any part of the $3,000 Client 1 had paid, saying that the fee was earned upon receipt pursuant to the Flat Fee Contract.

Count 2. "Client 2" hired the Law Office to represent her regarding her ex-husband's petition for rule to show cause and petition to modify child support. Client 2 agreed to pay an "engagement fee" of $1,500 and signed the Law Office's Hourly Fee Contract, which contained the following provisions:

> "[The] engagement fee is non-refundable and shall be deemed earned upon commencement of Attorney's work on the case[.]"

> "Attorneys agree to credit any engagement fee received from Client to Client's account at Attorneys' prevailing rate as it is established from time to time. Said engagement fee shall be due and owing at the time of execution of this contract. Client agrees to make no demand for a refund or return of any part of the engagement fee owed or paid."

Client 2 paid the $1,500-engagement fee, and later she paid an additional $3,000 under the terms of the Hourly Fee Contract. The Law Office then offered to complete the representation for an additional flat fee of $5,000. Client 2 accepted the offer and paid $5,000 to the Law Office. The Law Office intended the $5,000 flat fee to be non-refundable and deemed earned upon commencement of the representation. It further intended that the $5,000 flat fee would pay for the remainder of the representation. The Law Office prepared a written Flat Fee Contract for Client 2's representation. Although Client 2 never signed it, she confirmed in a letter to Respondent her understanding that the $9,500 she had paid was payment in full for the representation. Both parties thus agreed that Client 2's $5,000 payment would constitute payment in full for the balance of the representation.

3

After paying the Law Firm $5,000, Client 2 told Respondent that her ex-husband had molested their daughter. Respondent advised Client 2 that she could not sign a petition containing such allegations without further investigation and proof. Without further consulting with Respondent, Client 2 reported the molestation allegations to the police, which expanded and complicated the scope of the representation. Due to Client 2's unwillingness to pay any additional fee, Respondent and the Law Office ended their representation of Client 2 and withdrew as her attorney. The Law Office refused to refund any part of the fee paid by Client 2, saying that all fees were earned upon receipt and nonrefundable.

The Commission charged Respondent with violating Indiana Professional Conduct Rule 1.5(a), which prohibits making an agreement for, charging, or collecting an unreasonable fee, and Rule 1.16(d), which prohibits failure to refund an unearned fee promptly.[2]

### Discussion

Types of fee arrangements. There are a variety of terms used to describe the types of fee arrangements between attorneys and clients. In this opinion, the following terms will be used for three common types of attorney fees: (1) a "flat fee" is a fixed charge for a particular representation, often paid in full at the beginning of the representation; (2) an "advance fee" is a payment made at the beginning of a representation against which charges for the representation are credited as they accrue, usually on an hourly basis;[3] and (3) a "general retainer" is payment for an attorney's availability, which is earned in full when paid before any work is done.[4]

Regardless of the term used to describe a client's initial payment, its type is determined by its purpose, i.e., what it is intended to purchase. When the purpose is to serve as an advance payment to the lawyer of fees the lawyer will earn in the future by doing work for the client, that

---

[2] The Commission also alleged that Respondent violated Rule 1.2(a) by failure to abide by a client's decisions concerning the objectives of the representation. The hearing officer concluded Respondent did not violate this rule, and the Commission does not challenge this conclusion.

[3] This is sometimes referred to as a "special retainer" or a "security retainer."

[4] This is sometimes referred to as an "engagement retainer."

4

payment is either a flat fee or advance fee. On the other hand, when the purpose is simply to pay for the lawyer's *availability* to provide legal services as needed during a period of time, as opposed to payment for work not yet done, the fee is a general retainer. A general retainer acts as an option on the lawyer's future services, often on a priority basis, and precludes the lawyer from undertaking representations that might conflict with representing the client. In some cases, the lawyer may need to turn down unrelated employment to ensure availability if the client calls for immediate assistance. Because this fee is not intended to pay for work, but merely for the lawyer's availability, it is earned on payment and the attorney is entitled to the money even if no services are actually performed for the client, so long as the lawyer provides the bargained-for availability.[5] *See* Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Frerichs, 671 N.W.2d 470, 475-76 (Iowa 2003); *cf.* Jennings v. Backmeyer, 569 N.E.2d 689 (Ind. Ct. App. 1991) (attorney who charged "nonrefundable" fee to represent client against potential criminal charge was entitled to only reasonable value of services rendered before client's death).

Nonrefundability considerations. In addressing an attorney's use of "special nonrefundable retainer fee agreements" calling for nonrefundable minimum fees, the New York Court of Appeals opined:

> [T]he use of a special nonrefundable retainer fee agreement clashes with public policy because it inappropriately compromises the right to sever the fiduciary services relationship with the lawyer. Special nonrefundable retainer fee agreements diminish the core of the fiduciary relationship by substantially altering and economically chilling the client's unbridled prerogative to walk away from the lawyer. To answer that the client can technically still terminate misses the reality of the economic coercion that pervades such matters. If special nonrefundable retainers are allowed to flourish, clients would be relegated to hostage status in an unwanted fiduciary relationship—an utter anomaly. Such circumstance would impose a penalty on a client for daring to invoke a hollow right to discharge.

Matter of Cooperman, 633 N.E.2d 1069, 1072-73 (N.Y. 1994). In a similar vein, we have held: "A corollary of the client's right to discharge a lawyer is that a contract between the client and

---

[5] As one commentator has noted, describing even a justified general retainer as non-refundable is somewhat misleading "because a court may require any fee—including one earned upon receipt—to be disgorged or refunded if it is ultimately determined to be unreasonable . . . ." Douglas R. Richmond, *Understanding Retainers and Flat Fees*, 34 J. Legal Prof. 113, 129 (2009).

the lawyer that unduly impairs that right is invalid."  Galanis v. Lyons & Truitt, 715 N.E.2d 858, 861 (Ind. 1999).

This Court addressed the nonrefundability of fees in Matter of Kendall, 804 N.E.2d 1152 (Ind. 2004), in which:

> The respondent required certain clients to pre-pay him a portion of his fees before he performed any legal services.  These arrangements were set forth in contracts between the respondent and these clients that provided for the advance fee payments and specified that the advance fee payments were "nonrefundable."  Notwithstanding this nonrefundability provision in the contracts, it was the respondent's intention and practice to refund any unearned portion of the advance fee payments.

Id. at 1153.  We held that an advance fee cannot be nonrefundable and the assertion in a fee agreement that an advance fee is nonrefundable violates the requirement that a lawyer's fee be reasonable.  *See* id. at 1160.  We continued:

> Where the advance payment is in the nature of **a flat fee**, however, or for a partial payment of a flat fee, it is not only reasonable but also advisable that the agreement expressly reflect the fact that such flat fee is not refundable **except for failure to perform the agreed legal services.  If the legal services covered by a flat fee are not provided as agreed, an attorney must refund any unearned fees.**

Id. (emphasis added).

In an earlier case, Matter of Thonert, 682 N.E.2d 522 (Ind. 1997), this Court held that the respondent's demand for a nonrefundable $4,500 fee irrespective of any termination of the respondent's employment was an unreasonable fee.  We expanded:

> We do not hold that unrefundable retainers are per se unenforceable.  There are many circumstances where, for example, preclusion of other representations or guaranteed priority of access to an attorney's advice may justify such an arrangement.  **But here there is no evidence of, for example, any value received by the client or detriment incurred by the attorney in return for the nonrefundable provision, other than relatively routine legal services.**  Of course, the client is free to terminate the representation at any time.

6

Id. at 524 (emphasis added).  In Kendall, we then advised:  "Where a [general] retainer is thus justified, a lawyer would be well advised to explicitly include the basis for such non-refundability in the attorney-client agreement."  804 N.E.2d at 1160.

The nature of Respondent's engagement fees.  To determine the propriety of the nonrefundable "engagement fees" Respondent charged Clients 1 and 2, we must determine the nature of the fees.  The Law Firm's fee agreements state that the engagement fee is "non-refundable and shall be deemed earned upon commencement of Attorney's work on the case." Stipulation of Facts, Exhibits A and B.  However, "an attorney cannot treat a fee as 'earned' simply by labeling the fee 'earned on receipt' or referring to the fee as an 'engagement retainer.'" Matter of Sather, 3 P.3d 403, 412 (Colo. 2000).  "[I]t is the actual nature of the attorney-client relationship, not the label used, that will be determinative."  Kendall, 804 N.E.2d at 1160.  We therefore turn to the circumstances of Respondent's representations to determine the nature of the fees she charged, which turns on what those fees were intended to purchase.

Respondent contends her engagement fee is paid by a client to induce the Law Firm to take a case and thus is earned on receipt.  The Law Firm's fee agreements, however, also provide that the engagement fee would be credited against either Respondent's hourly fee or her flat fee. Thus, if Respondent completed the work called for in the contracts, the entire engagement fee would have been used to purchase the services Respondent rendered.  This is evidence that the engagement fees were intended to buy the legal services she agreed to perform rather than simply her availability at the outset.

Although not required by the rules, we suggested in Kendall that a fee agreement for a general retainer explicitly include the basis for nonrefundability.  In this case, the contracts do not indicate any particular circumstances that would justify charging Clients 1 and 2 general retainers. Moreover, we note that the nonrefundability language at issue is contained in the Law Office's form contracts it uses for most family law clients regardless of whether their particular circumstances support charging a general retainer.  A contract provision for a nonrefundable general retainer, with or without a recitation of supporting circumstances, cannot be inserted as

7

boilerplate language in all of a firm's fee agreements. Routine inclusion of such a provision in all fee agreements regardless of the circumstances would be misleading; and regardless of what the contract says, the basis for charging a nonrefundable general retainer in a particular case must be supported by the actual circumstances of that case.

Respondent contends that nonrefundability of the fees she charged Clients 1 and 2 is justified because representing these clients precluded the Law Firm from representing the opposing parties and required time that the firm otherwise could have devoted to other representations. This, however, would be true any time an attorney is engaged by a client. Representing one client necessarily precludes the lawyer's employment by the client's opponent. Time spent on one case is always time that cannot be spent on others. "A lawyer who agrees to perform legal services also necessarily agrees to be available to perform those services. Thus, this type of availability is unrelated to the type of availability of a general retainer and is insufficient to justify a nonrefundable minimum fee." Frerichs, 671 N.W.2d at 477 (citation omitted).

In her briefs, Respondent describes circumstances she contends justified charging Clients 1 and 2 nonrefundable fees. For example, she contends that seeking a protective order for Client 1 required immediate attention just before a Thanksgiving holiday, which burdened the firms' attorneys and staff, and that Client 1 had a history of bringing actions against her husband and then dismissing them. Those alleged circumstances, however, are not included in the parties' stipulated facts, which describe only fairly routine legal services provided in family law cases, and we therefore will not address whether these alleged circumstances would justify a nonrefundable general retainer.

In determining the nature of the engagement fees, we finally note that the Law Firm's contract with Client 1 was entitled a Flat Fee Contract and stated explicitly that Client 1 would be billed a "flat fee," which was equal in amount to the engagement fee, for the representation described in the contract. Although Client 2 first signed a contract calling for an hourly fee, the parties later modified it to provide for payment of a fixed additional amount to complete the

8

representation. This, coupled with the absence of evidence justifying general retainers, leads us to conclude that the fees at issue are flat fees for work to be performed.[6]

Respondent's making agreements for and charging nonrefundable flat fees. In addressing flat fees in Kendall, we said it is both reasonable and advisable that a fee agreement expressly reflect that a flat fee is not refundable "except for failure to perform the agreed legal services." 804 N.E.2d at 1160. However, rather than advise clients of this exception, the Law Firm's Flat Fee Contracts told clients that the fee was nonrefundable "even if the Client-Attorney relationship terminates prior to the completion of Attorneys' representation." The presence of this contract provision, even if unenforceable, could chill the right of a client to terminate Respondent's services, believing the Law Firm would be entitled to keep the entire flat fee regardless of how much or how little work was done and the client would have to pay another attorney to finish the task. We conclude that Respondent violated Rule 1.5(a) by including an improper nonrefundability provision in her flat fee agreements.

The fee agreements not only *stated* that the flat fees were nonrefundable under any circumstances, but Respondent also *treated* them as such. We therefore conclude that Respondent also violated Rule 1.5(a) by charging and collecting flat fees that were nonrefundable regardless of the circumstances, even if Respondent failed to perform the agreed legal services. *See* Kendall, 804 N.E.2d at 1160.

Notwithstanding Kendall, Respondent argues that Indiana law should allow parties to contract for nonrefundable flat and advance fees, citing authorities from other jurisdictions. She points particularly to Grievance Adm'r, Attorney Grievance Comm'n v. Cooper, 757 N.W.2d 867 (Mich. 2008), a brief per curiam order (with one concurring opinion) finding no problem with an attorney's contract for a $4,000 minimum fee that was nonrefundable regardless of whether the representation was terminated by the client before the billings at the stated hourly rate exceeded the minimum. Cooper is not without its detractors. For example:

_____

[6] Because Client 2's contract initially called for an hourly rate fee, Count 2 alleged a violation of Rule 1.5(a) by charging a nonrefundable hourly fee. The hearing officer made no conclusion regarding this charge, and neither party raised this charge in their briefs to this Court. This opinion, therefore, addresses only the charges relating to flat fees.

9

> Cooper is a difficult case to understand because the decision is so cursory. Courts and lawyers generally understand that a "minimum fee" refers to some sort of advance fee—most likely a security retainer. If that is the situation here, then it is possible that non-refundable security retainers oddly pass professional responsibility muster in Michigan. . . . [G]iven the brevity and opacity of the opinion, no one should put much stock in Cooper.

Douglas R. Richmond, *Understanding Retainers and Flat Fees*, 34 J. Legal Prof. 113, 131 (2009) (underscore added; footnote omitted). We agree with the Commission that Indiana appears to be in the majority on this issue, *see, e.g.,* Matter of Sather, 3 P.3d 403 (Colo. 2000); Matter of Cooperman, 633 N.E.2d 1069 (N.Y. 1994), that this is the better position, and that it should not be changed.

The Court is mindful of the legitimate concern of attorneys that they will go through the initial steps of opening a case and beginning work for a new client, only to have that client discharge them and demand a refund of the entire initial payment as unearned. The solution, however, is not allowing attorneys to charge flat or advance fees upfront that are wholly nonrefundable regardless of the amount of services rendered. As an alternative, a fee agreement could designate a reasonable part of the initial payment that would be deemed earned by the attorney for opening the case and beginning the representation. If a general retainer for availability is justified and additional charges for actual services are contemplated, the contract could include a statement of the amount of the general retainer and the circumstances supporting it along with a provision setting forth how the fees for actual services will be calculated and collected.[7] Even without such contract provisions, "[i]t is well settled that, where the complete performance of an attorney's services has been rendered impossible, or otherwise prevented, by the client, the attorney may, as a rule, recover on a quantum meruit for the services rendered by him [or her]." French v. Cunningham, 149 Ind. 632, 49 N.E. 797, 798 (1898).

Respondent's failure to refund any part of the flat fees collected from Clients 1 and 2. "If the legal services covered by a flat fee are not provided as agreed, an attorney must refund any unearned fees." Kendall, 804 N.E.2d at 1160. Thus, Respondent was obligated under Rule

---

[7] Of course, regardless of how a particular contract is drafted, the fee charged must be reasonable. *See* Prof. Cond. R. 1.5(a).

1.16(d) to refund to Clients 1 and 2 any unearned portion of the flat fees they paid her. The question is how to determine how much of each flat fee was unearned.

The Commission makes no contention that Respondent did not work diligently and professionally in her representation of Client 1 and Client 2. The Commission makes no contention that Respondent's fee, if charged at her hourly rate, would not have exceeded the flat fee each client paid. The Commission argues, however, that if a flat fee representation is not completed, by definition some amount of the flat fee necessarily must be unearned and returned to the client.

With the limited record in this case, we are not prepared to hold that some amount of a flat fee must be returned in all cases in which the attorney-client relationship ends before the work contracted for is completed. Perhaps the entire flat fee could be deemed earned if the client deals unfairly with the attorney or refuses to cooperate with the attorney, and then either fires the attorney or makes continuation of the representation ethically impossible after the attorney expends considerable time and effort on the case. Respondent asserts circumstances like these existed with both Clients 1 and 2. Because this case was submitted to the hearing officer on the parties' limited stipulations, we find the evidence is insufficient to make a definitive determination of how much, if anything, Respondent should have refunded to Clients 1 and 2. The Court therefore concludes that the Commission failed to meet its burden of proving by clear and convincing evidence that Respondent violated Rule 1.16(d) in the circumstances stipulated for Clients 1 and 2. *See* Admis. Disc. R. 23, sec. 14(i).

Discipline. The parties stipulated that Law Firm's contracts were drafted with the intent that they comply with Kendall. While not making a recommendation regarding discipline, the hearing officer noted that the Commission suggested the appropriate sanction is between a public reprimand and a short suspension with automatic reinstatement. Attorneys with misconduct similar to Respondent's have received public reprimands. *See, e.g.,* Matter of Stephens, 867 N.E.2d 148, 156-57 (Ind. 2007); Matter of Whitehead, 861 N.E.2d 702 (Ind. 2007); Kendall, 804 N.E.2d at 1161; *cf.* Thonert, 682 N.E.2d at 526 (30-day suspension with automatic reinstatement for similar misconduct plus knowingly making false statement to the Commission). Although

11

the unrelenting denial by Respondent (through her law firm, which has vigorously represented her) of any misconduct in the face of strong precedent to the contrary might counsel in favor of a greater penalty, we note the mitigating factors of Respondent's lack of prior disciplinary history and her cooperation with the Commission. We conclude, on balance, that Respondent should receive a public reprimand.

## Conclusion

The Court concludes that in charging nonrefundable flat fees, Respondent violated Indiana Professional Conduct Rule 1.5(a) by making agreements for and charging unreasonable fees. For Respondent's professional misconduct, the Court imposes a public reprimand.

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

The Clerk of this Court is directed to give notice of this opinion to the hearing officer, to the parties or their respective attorneys, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this opinion to the Court's website, and Thomson Reuters is directed to publish a copy of this opinion in the bound volumes of this Court's decisions.

Dickson, Sullivan, and David, JJ., concur.

Shepard, C.J., with whom Rucker, J., joins, dissenting only as to the sanction. Respondent's lawyer indicates in very strong language that she is unrepentant. We conclude that a period of suspension without automatic reinstatement is necessary for the protection of clients.