ATTORNEY FOR RESPONDENT
Michael E. Brown
Kightlinger & Gray, LLP
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Secretary
John P. Higgins, Staff Attorney
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 82S00-1305-DI-386

IN THE MATTER OF:

ANDREW D. THOMAS,

*Respondent.*

Attorney Discipline Action
Hearing Officer Thomas R. Thomas, Sr.

**May 12, 2015**

**Per Curiam.**

We find that Respondent, Andrew Thomas, engaged in attorney misconduct by, among other things, neglect of a client's case, pervasive mismanagement of his attorney trust account, and conversion of client funds. For this misconduct, we conclude that Respondent should be suspended for 240 days without automatic reinstatement.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. Respondent's 1976 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

**Procedural Background and Facts**

The Commission filed an eight-count "Verified Complaint for Disciplinary Action" against Respondent on May 29, 2013. Multiple rule violations were charged within many of these counts. The Commission withdrew certain charges at the outset of the hearing, including Count 7 in its entirety. The remaining charges alleged that Respondent violated the following rules governing professional conduct:

Ind. Professional Conduct Rules:

1.3: Failure to act with reasonable diligence and promptness.

1.15(a): Commingling client and attorney funds.

3.3(a)(1): Knowingly making a false statement of fact to a tribunal.

5.3(a) and (b): Failure to make reasonable efforts to assure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer.

5.3(c): Failing to take reasonable remedial action with respect to the misconduct of nonlawyer assistants under the lawyer's supervision.

8.4(a): Attempting to violate the Rules of Professional Conduct.

8.4(b): Committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer.

8.4(c): Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

Admission and Discipline Rules:

23(29)(a)(3): Failure to create or retain sufficiently detailed client ledgers.

23(29)(a)(4): Commingling client funds with other funds of the attorney or firm.

23(29)(a)(5): Making withdrawals from a trust account without written withdrawal authorization stating the amount and purpose of the withdrawal and the payee.

2

Ind. Professional Conduct Guidelines Regarding Use of Non-Lawyer Assistants:

> 9.1:  A lawyer is responsible for all of the professional actions of a non-lawyer assistant performing services at the lawyer's direction and should take reasonable measures to insure that the non-lawyer assistant's conduct is consistent with the lawyer's obligations under the Rules of Professional Conduct.

Rules Governing Attorney Trust Account Overdraft Reporting

> Overdraft Rule 7(B)(1):  Allowing a non-lawyer assistant to sign trust account checks and to deliver to him opened and unsealed trust account statements.

Prior to the hearing, the parties also entered into written "Agreed Stipulations" that they agreed would be treated as "conclusively established."  The hearing officer filed his report on October 17, 2014, which we summarize and adopt in part as described below.

*Mismanagement of Respondent's trust account (Counts 1 and 2).*  For several years, Respondent employed various experienced persons to manage his law office and attorney trust account.  However, at some point between 2002 and 2004, Respondent's wife ("Marcia") took over management of Respondent's trust account.  Marcia had no prior experience with trust accounts or fiduciary accounting.  Beginning in 2004 or 2005, Respondent abdicated control of his trust account to Marcia and did not adequately supervise her. Beginning around 2006, Respondent became aware that his trust account was in poor shape and needed to be "untangled." Despite his knowledge that Marcia's accounting was incorrect, during the next several years Respondent did not take appropriate measures to supervise Marcia or reconcile his trust account issues. And throughout 2009 and 2010, with Respondent's permission Marcia signed Respondent's name to the drawer's line on trust account checks.  During this same time, Marcia also opened the trust account bank statements received in the mail prior to giving them to Respondent.

Respondent stipulated, and the hearing officer found, a number of violations with respect to Counts 1 and 2:

- his inadequate oversight of Marcia's conduct and his failure to take appropriate remedial steps to address Marcia's misconduct once it became known violated Professional Conduct Rules 5.3(a), 5.3(b), and 5.3(c) and Professional Conduct Guideline 9.1;

- allowing Marcia to sign trust account checks and open trust account statements prior to delivering them to Respondent violated Rule 7(B)(1) of the Indiana Supreme Court Disciplinary Commission Rules Governing Attorney Trust Account Overdraft Reporting;

- his failure to maintain trust account ledgers and making disbursements without written withdrawal authorizations violated Admission and Discipline Rules 23(29)(a)(3) and 23(29)(a)(5).

Respondent was also charged in Count 2 with violating Professional Conduct Rules 8.4(b) and 8.4(c) based on alleged criminal conversion for being "out of trust" and using funds of one client to pay the obligations of other clients. But Respondent did not stipulate to these violations and the hearing officer concluded the Commission had failed to sustain its burden of proof on these charges.

*Respondent's bankruptcy disclosures (Count 3).* Respondent filed for bankruptcy protection in 2009. Respondent did not list his attorney trust account in the schedules or the Statement of Financial Affairs ("SOFA") he filed as part of his bankruptcy. In response to the Commission's investigation in this case, Respondent filed an answer on January 20, 2012, indicating that he would "amend my [SOFA] to list my escrow account as monies held for others." But he did not amend his schedules and SOFA until January 2013—by which time his bankruptcy petition was in the process of being dismissed due to Respondent's failure to make payments pursuant to the bankruptcy plan. Because of this dismissal, no further amendment was required.

Respondent was charged with violating Professional Conduct Rule 3.3(a)(1)'s prohibition on lawyers knowingly making a false statement of fact or law to a tribunal or failing to correct a false statement of material fact or law previously made to the tribunal by the lawyer. However,

4

the hearing officer concluded that no violation had been proven based on his finding that the "inaccuracy of the amendment was not a material inaccuracy to the bankruptcy case and would not have affected its outcome even if the [2013] amendment had been reflected in any of the earlier Schedules." (HO Report at 11).

*Payments of Respondent's personal expenses from the trust account (Counts 4 and 6).* Respondent was charged in both of these counts with violation of Professional Conduct Rules 8.4(b) and 8.4(c), and additionally in Count 4 with a violation of Rule 8.4(a), based on alleged criminal conversion for using client funds from his attorney trust account to pay his own bankruptcy filing fee and the cost of attending two continuing legal education programs. As to both of these counts, Respondent stipulated that by paying these personal expenses using client funds from the trust account, he committed the crime of conversion, thus violating Rules 8.4(a) and 8.4(b) in Count 4 and Rule 8.4(b) in Count 6. Despite these express written stipulations, the hearing officer found in Respondent's favor with respect to all of the charged rule violations in Counts 4 and 6.

*Credit reports (Count 5).* Respondent was charged with violating Professional Conduct Rule 1.15(a) and Admission and Discipline Rule 23(29)(a)(4) (for commingling), and Professional Conduct Rules 8.4(b) and 8.4(c) (for conversion and deception), based on his depositing of client funds into his operating account for the purchase of credit reports. As part of his bankruptcy practice, Respondent regularly had to obtain credit reports for his clients, and he did so through a company called CreditInfoNet ("CIN"). A change in CIN's procedures in 2008 eliminated the need for forms executed by the client; instead, the process was handled online by Respondent's staff. Based on this change in procedure, Respondent stopped escrowing payments advanced by the clients for these reports and instead began placing these payments into his general operating account, and he would pay CIN from his operating account once a client's credit report was ordered.

In sum, the Commission's position in these proceedings is that despite the change in CIN's procedures, these advance payments were client funds and should have been held by Respondent in his trust account until the credit report was ordered. Respondent maintains that he had fully

5

earned the advance expenses for credit reports as soon as the clients gave him the money, and that any money not used for credit reports would be returned. The hearing officer found that the Commission had failed to prove a violation of Admission and Discipline Rule 23(29)(a)(4) for commingling and also had failed to prove violations of Rules 8.4(b) and 8.4(c) for deception. The hearing officer did not make any findings or conclusions specifically addressing Rule 1.15(a).[1]

*Representation of "Client" (Count 8).* Respondent agreed to represent "Client" in defense of a claim brought against Client by a bank. However, Respondent failed to file an answer to the complaint, resulting in a default judgment being entered against Client in the amount of $60,875 plus 8% interest. Client's subsequent malpractice suit against Respondent was settled with payment to Client. Respondent stipulated, and the hearing officer found, that he violated Professional Conduct Rule 1.3 by failing to act with reasonable diligence and promptness when representing Client.

## Discussion

The Disciplinary Commission has petitioned this Court to review the hearing officer's adverse findings and conclusions on Counts 2 through 6 of the verified complaint, as well as several of the mitigating factors found by the hearing officer.[2] The Commission carries the burden of proof to demonstrate attorney misconduct by clear and convincing evidence. *See* Ind. Admission and Discipline Rule 23(14)(i). We review *de novo* all matters presented to the Court, including review not only of the hearing officer's report but also of the entire record tendered in the case. *See* Matter of Brizzi, 962 N.E.2d 1240, 1244 (Ind. 2012). The hearing officer's findings receive emphasis due to the unique opportunity for direct observation of witnesses, but this Court reserves the right to make the ultimate determination. Id.

---

[1] The Commission withdrew the first of two separate Rule 1.15(a) allegations (based on inadequate recordkeeping) but prosecuted the second allegation (based on commingling). (Tr. at 42). However, the hearing officer appears to have erroneously treated the alleged violation of Rule 1.15(a) as wholly withdrawn. (HO Report at 13).

[2] The rule violations found by the hearing officer in Counts 1, 2, and 8 are not challenged on review, and with the exception of the hearing officer's finding that Client was "fully compensate[d]" for Respondent's neglect of his case, we otherwise adopt the hearing officer's findings and conclusions with respect to the rule violations found in those counts.

An overarching theme in much of the hearing officer's report and in the parties' review briefs involves whether many of the charged instances of misconduct were criminal or merely negligent in nature. However, we need not delve too deeply into this issue, because Respondent expressly stipulated in advance of the hearing that he committed conversion and, in so doing, that he violated Professional Conduct Rules 8.4(a) and 8.4(b). In making these stipulations, the parties agreed that while additional relevant evidence might be introduced at the hearing, "the matters stipulated to herein are conclusively established." Respondent is bound by these stipulations, and the hearing officer erred by not giving them effect.

Similarly, we conclude under the circumstances of this case that Respondent violated his duty of candor toward a tribunal under Professional Conduct Rule 3.3(a)(1) by failing to list his attorney trust account in his bankruptcy schedules and SOFA. We acknowledge Respondent's argument that in most instances, an attorney's trust account will not vest in the bankruptcy estate because it contains property of others and not property of the debtor. Here though, Respondent knew that his trust account was in shambles and that he could not adequately identify whose money was in the account. Moreover, Respondent expressly stipulated that he was required to disclose all personal funds held in the trust account on his schedules, and that he was required to disclose client funds held in the trust account on his SOFA. Respondent also assured the Commission in January 2012 that he would amend his SOFA to list his trust account, yet he did not do so until a year later, when his bankruptcy petition was on the verge of dismissal due to Respondent's failure to comply with the payment plan.

Regarding the fees advanced by clients to Respondent in order to obtain credit reports, we agree with the Commission's position that, notwithstanding the change in CIN's procedures, these advanced fees remained the property of the clients until such time as the credit reports were ordered and the expenses incurred. Accordingly, the fees should have been deposited in Respondent's trust account and withdrawn only as the expenses were incurred. By instead depositing these advanced fees into his operating account, Respondent improperly commingled client funds with his own, in violation of Professional Conduct Rule 1.15(a) and Admission and Discipline Rule 23(29)(a)(4).

Finally, under the particular circumstances of this case, we adopt the portions of the hearing officer's report declining to find in any of the counts a separate violation of Professional Conduct Rule 8.4(c).

**Sanction**

Our analysis of appropriate discipline entails consideration of the nature of the misconduct, the duties violated by the respondent, any resulting or potential harm, the respondent's state of mind, our duty to preserve the integrity of the profession, the risk to the public should we allow the respondent to continue in practice, and matters in mitigation and aggravation. *See* Matter of Newman, 958 N.E.2d 792, 800 (Ind. 2011).

Initially, we note our disagreement with several of the mitigating factors identified by the hearing officer. The record simply does not support the hearing officer's findings that Respondent "made immediate restitution to [Client] and his trust account" and that no client suffered financial loss because of Respondent's negligence. Further, Respondent's diagnosed attention deficit hyperactivity disorder does not explain, excuse, or mitigate the misconduct that occurred here.

Facts in aggravation in this case include Respondent's substantial experience in the practice of law, the long-term pattern of misconduct committed by Respondent over the span of several years, and the number of violations during that time. Facts in mitigation include Respondent's lack of prior disciplinary history, his cooperation with the Commission and the disciplinary process, his stipulations designed to streamline the hearing process, and the attestation of professional acquaintances to Respondent's skill and good reputation.

The hearing officer recommended that Respondent receive a suspension of ninety (90) days with automatic reinstatement, and Respondent agrees with this recommendation. The Commission requests a suspension of at least three years, without automatic reinstatement.

8

After careful consideration of this matter, we conclude that Respondent should be suspended for a period of at least 240 days and required to go through the reinstatement process before resuming practice. Approval of a petition for reinstatement is discretionary and requires clear and convincing evidence of the petitioner's remorse, rehabilitation, and fitness to practice law. *See* Admis. Disc. R. 23(4)(b).

## Conclusion

The Court concludes that Respondent violated Professional Conduct Rules 1.3, 1.15(a), 3.3(a)(1), 5.3(a), 5.3(b), 5.3(c), 8.4(a), and 8.4(b); Admission and Discipline Rules 23(29)(a)(3), 23(29)(a)(4), and 23(29)(a)(5); Professional Conduct Guideline 9.1; and Overdraft Rule 7(B)(1). The Court concludes that Respondent did not violate Professional Conduct Rule 8.4(c).

For Respondent's professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than 240 days, without automatic reinstatement, beginning June 23, 2015. Respondent shall not undertake any new legal matters between service of this opinion and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(4).

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

All Justices concur.