ATTORNEY FOR RESPONDENT
Donald R. Lundberg
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Director
Angie Ordway, Staff Attorney
Indianapolis, Indiana

# In the
# Indiana Supreme Court

FILED

May 03 2017, 3:07 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 35S00-1509-DI-577

IN THE MATTER OF:

JUSTIN R. WALL,

*Respondent.*

Attorney Discipline Action
Hearing Officer Robert C. Reiling, Jr.

**May 3, 2017**

**Per Curiam.**

We find that Respondent, Justin Wall, engaged in attorney misconduct arising from his relationship with a Florida corporation. For this misconduct, we conclude that Respondent should be suspended for 30 days with automatic reinstatement.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. Respondent's 2008 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

**Procedural Background and Facts**

The Commission filed a "Verified Complaint for Disciplinary Action" against Respondent on September 28, 2015, alleging numerous rule violations arising out of Respondent's relationship with McCann Law Group, d/b/a Consumer Attorney Services, P.A. ("CAS"), a Florida corporation that purported to offer clients services relating to bankruptcy, mortgage modification, and foreclosure defense.

CAS advertised its services to consumers in Florida and elsewhere, including Indiana, and solicited local counsel in states other than Florida. Under the terms of CAS's contractual arrangements with clients and local counsel, most client work was handled by central staff (including lawyers and nonlawyer assistants) in Florida, with local counsel's involvement generally limited to aspects of the case requiring a local attorney's services. In a typical case, prospective clients would discuss their options with a CAS intake paralegal and then enter into a representation agreement with CAS. CAS typically charged clients an upfront "nonrefundable" fee and, in many instances, ongoing monthly fees.

In 2012 Respondent signed agreements with CAS, first as an "associate" and later as a "partner," under which Respondent would provide discrete services to CAS's Indiana bankruptcy and foreclosure defense clients. CAS entered into similar agreements with other Indiana attorneys as well. Respondent received fixed sums for select services, sums that represented only a small fraction of the total fee charged to clients by CAS. As a "partner," Respondent also received $25 for every case assigned to other CAS-associated attorneys in Indiana as well as minimum wage for 10-20 hours per week as "partner pay."

Respondent's role in these cases generally was as follows. A CAS paralegal would assign a case to Respondent after the client had signed a representation agreement with CAS. Respondent then would perform a "welcome call" to the client and explain that he would be the "boots in the trenches" for CAS, assisting the client either through mortgage modification services or foreclosure defense. In most instances though, Respondent's sole objective was to get the mortgagee to agree to a modification. CAS's business model contemplated that most

document preparation and client communication would be performed by CAS staff in Florida. However, Respondent testified he reviewed all pleadings and made changes where warranted before signing and filing them, and he testified he made himself available to clients above and beyond the "welcome call" CAS paid him to make.

Following a hearing, the hearing officer issued a report finding against Respondent on some charges, against the Commission on other charges, and leaving still other charges unaddressed. Both Respondent and the Commission have petitioned for review.

**Discussion**

We have examined CAS's business model and arrangements with Indiana attorneys twice before. In Consumer Attorney Services, P.A. v. State, 71 N.E.3d 362 (Ind. 2017), we affirmed the denial of summary judgment for CAS and its principal member in a suit brought by our Attorney General, holding neither defendant was exempt from civil liability under various consumer protection statutes. In Matter of Jackson, 24 N.E.3d 419 (Ind. 2015), we approved agreed discipline for another CAS-associated Indiana attorney. The present case comes to us in a different posture than either of those cases though, and we confine our analysis today to the specific issues, evidence, and arguments now before us.

The Commission carries the burden of proof to demonstrate attorney misconduct by clear and convincing evidence. *See* Ind. Admission and Discipline Rule 23(14)(i) (2016). We review *de novo* all matters presented to the Court, including review not only of the hearing officer's report but also of the entire record. *See* Matter of Thomas, 30 N.E.3d 704, 708 (Ind. 2015). The hearing officer's findings receive emphasis due to the unique opportunity for direct observation of witnesses, but this Court reserves the right to make the ultimate determination. Id.

With these considerations in mind, we explore the various Indiana Rules of Professional Conduct alleged to have been violated by Respondent as well as the appropriate sanction for Respondent's misconduct.

*Consultation with clients regarding limited scope of representation (Rules 1.4(a)(1) and 1.4(a)(5)).* The hearing officer found no violation of these rules, and the Commission has petitioned for review of those findings. While the written representation agreements executed by CAS clients did not completely and accurately spell out for clients the division of labor and responsibility between CAS and local counsel, Rules 1.4(a)(1) and 1.4(a)(5) do not require this to be in writing. Respondent testified he discussed these matters with clients during his initial phone call to them, and the hearing officer appears to have credited that testimony. Respondent also testified he made himself available and performed case services above and beyond what was minimally required of him under his arrangement with CAS, often without additional compensation. The Commission did not call any of Respondent's clients to testify. The Commission urges us to draw an inference contrary to Respondent's testimony from phone logs tending to show a comparatively low number and duration of calls between Respondent and his clients, but we see no reason to reweigh the conflicting evidence. Accordingly, we concur with the hearing officer's conclusion that the Commission failed to carry its burden of proving a violation of Rules 1.4(a)(1) or 1.4(a)(5), and we find in Respondent's favor on these charges.

*Improper fee splitting (Rule 1.5(e)).* Rule 1.5(e) sets forth three requirements that must be met for a division of a fee between lawyers who are "not in the same firm." No argument is advanced that these requirements were met; and indeed, at least one (that the client agree in writing to the share each lawyer will receive) indisputably was not met. Rather, Respondent contends, and the hearing officer agreed, that the rule is inapplicable here because Respondent was a member of CAS.

The hearing officer viewed the Court of Appeals' decision in the <u>Consumer Attorney Services</u> appeal as dispositive of this issue, but we find fault with this approach for many of the same reasons we recently addressed in <u>Matter of Smith</u>, 60 N.E.3d 1034 (Ind. 2016).[1] Moreover, the Court of Appeals' decision was not yet final, and eventually was vacated upon our grant of transfer in that appeal.

---

[1] We note the hearing officer in this case, who also happens to be the same hearing officer we appointed in <u>Smith</u>, did not have the benefit of our decision in <u>Smith</u> at the time he issued his report in this case.

Reviewing *de novo* the record before us, we conclude that the evidence shows Respondent was not "in the same firm" as CAS for purposes of Rule 1.5(e). CAS's agreements with clients and with local counsel assigned responsibility for most tasks to CAS central staff in Florida and generally limited local counsel's responsibilities to only those tasks requiring a local counsel, provisions that seemingly would be unnecessary if CAS and its contracted local counsel were truly "in the same firm." Further, Respondent's "associate" agreement expressly identified and treated Respondent as an independent contractor. Under both that agreement and his subsequent "partner" agreement, he was paid small sums for discrete services, sums that amounted to a very small fraction of the amounts charged to the clients by CAS. Respondent maintained his own law firm (Wall Legal Services) throughout his relationship with CAS, and he used his own firm name and letterhead in legal pleadings and letters sent to clients and others in connection with CAS cases. While no one factor necessarily is dispositive, the evidence in its totality leads us to conclude Respondent and CAS were not "in the same firm." Accordingly, we find that Respondent violated Rule 1.5(e).[2]

*Assisting CAS with charging and collecting an unreasonable fee (Rules 8.4(a) and 1.5(a)).* The hearing officer found a direct violation of Rule 1.5(a), based on the $25 "partner pay" Respondent received for every case assigned to other CAS-associated attorneys in Indiana. However, the hearing officer concluded Respondent did not assist CAS in charging or collecting an unreasonable fee from clients because Respondent was not aware of each client's final bill. Both parties have petitioned for review.

The $25 "partner pay" was not a theory advanced by the Commission as grounds for a Rule 1.5(a) violation. Nor was this a fee charged to or collected from a client; rather, it was a compensation matter between Respondent and CAS. Thus, the hearing officer's finding of a direct violation on these grounds cannot stand.

---

[2] We acknowledge that Respondent's "partner" agreement purported to make Respondent an employee of CAS, at least nominally. Having determined Respondent's conduct under his "associate" agreement violated Rule 1.5(e), we need not address the impact, if any, that Respondent's "partner" agreement might have on this analysis.

However, we readily conclude from the evidence that Respondent did assist CAS in charging an unreasonable fee. That Respondent was not aware of the precise amount billed to any client is immaterial in these circumstances. As Respondent acknowledged in his testimony, "nonrefundable" retainers generally are permissible in Indiana only to the extent they pay to reserve the attorney's time and availability. *See* Matter of O'Farrell, 942 N.E.2d 799 (Ind. 2011). Respondent knew that CAS's representation agreements called for clients to be charged about $1,200 as a nonrefundable retainer, which according to the agreements was to reserve local counsel's time to review the file, and yet CAS paid Respondent only $75 to review the file and perform a "welcome call" for the client. Further, Respondent knew that CAS charged clients recurring monthly fees (usually between $400 to $1,300) that were not tied to the work being done on the client's case. (Tr. at 90-96). Accordingly, we find Respondent assisted CAS in charging clients an unreasonable fee, in violation of Rules 8.4(a) and 1.5(a).

*Supervision of nonlawyers (Rule 5.3(b)).* This rule requires a lawyer with "direct supervisory authority" over a nonlawyer to make reasonable efforts to ensure the nonlawyer's conduct is compatible with the lawyer's professional responsibilities. Based on Respondent's testimony, the hearing officer concluded Respondent did not violate this rule because CAS's paralegals were supervised by an Indiana-licensed attorney on CAS's central staff. The Commission labels Respondent's testimony as "self-serving" and urges us to draw a contrary inference from other evidence, but we again see no reason to reweigh conflicting evidence. Accordingly, we concur with the hearing officer's conclusion that the Commission failed to carry its burden of proof, and we find in Respondent's favor with respect to the Rule 5.3(b) charge.

*Assisting CAS with using an improper trade name (Rules 8.4(a) and 7.5(a)(4)).* Rule 7.5(a)(4) imposes certain requirements upon the use of a trade name by an attorney in private practice, including among other things that "the name shall include the name of a lawyer." The hearing officer found no violation, and we agree. CAS's website and representation agreements both listed "McCann Law Group" in connection with the CAS trade name. Moreover, Respondent generally utilized his own firm name in legal pleadings and case-related correspondence. The Commission has failed to sustain its burden of proving Respondent

assisted CAS with using an improper trade name, and accordingly we find in Respondent's favor on this charge.

*Assisting CAS in the unauthorized practice of law (Rule 5.5(a)).* The findings of the hearing officer on this charge were equivocal, and both parties have sought review.

We have confronted similar business models in disciplinary cases before. *See* Matter of Fratini, ___ N.E.3d ___ (Ind. Feb. 10, 2017); Matter of Joyce, 9 N.E.3d 142 (Ind. 2014); Matter of Dilk, 2 N.E.3d 1263 (Ind. 2014). And in Jackson, we found the conduct of another CAS-associated attorney violated Rule 5.5(a), although that was an agreed disposition on stipulated facts.

We also have confronted this issue in proceedings brought under Admission and Discipline Rule 24 to enjoin the unauthorized practice of law, and we find one of those cases particularly instructive here. In State *ex rel.* Indiana State Bar Association v. United Financial Systems Corp., 926 N.E.2d 8 (Ind. 2010), a company's nonlawyer salespeople marketed estate planning services to customers, using those services as a loss leader to generate more lucrative sales of annuities and other insurance products. The vast majority of customer interaction was performed by nonlawyers. The company utilized independent contractor "panel attorneys" to provide nominal document review and client consultation. The customers paid the company about $2,700 for the estate plan most commonly pushed by sales associates. From those funds, the salesperson received a commission ranging from $750 to $900, and the panel attorney was paid a flat fee of $225 to make an initial phone call and draft the estate planning documents.

The company in United Financial cited the involvement of its panel attorneys in arguing its practices were lawful. In particular, the company argued that its panel attorneys exercised independent judgment and played a greater role than merely drafting testamentary documents. We held otherwise though, explaining that the company's "business model has marginalized the attorney's role to such a degree as to cross the line of permissible practices." Id. at 15.

We find more similarities than differences between CAS's business model and the practices at issue in United Financial. Only a small fraction of the fees CAS charged to clients was channeled to local counsel. The fixed low sums allocated to local counsel for discrete and largely perfunctory legal tasks served to marginalize attorney involvement, a point reinforced by the provisions in CAS's agreements with clients and local counsel steering responsibility for most tasks toward CAS central staff and away from local counsel. Additionally, neither the initial retainer nor recurring monthly fees CAS charged its customers were tethered to the amount of services rendered. Customers were not told of the fee allocation between CAS and local counsel, and thus were left unaware that, in most instances, greater attorney involvement likely could be had in their cases for far less cost. We acknowledge that Respondent's testimony (apparently credited by the hearing officer) that CAS's paralegals were supervised by an Indiana-licensed attorney on CAS's central staff lends itself to an inference of slightly greater attorney involvement in the client intake process than existed in the United Financial case. Nonetheless, we are persuaded by the balance of factors in this case that CAS's business practices *in toto* amount to the unauthorized practice of law.

Having reached this conclusion, it follows that Respondent assisted in the unauthorized practice of law. The observation we made with respect to a similar arrangement in Dilk holds equally true here: "Without the involvement of Respondent, the [company] could not have provided the services they offered to homeowners. Selling the assistance of an attorney to defend a foreclosure action was a necessary part of their business model." Id. at 1265. We acknowledge Respondent's testimony that he sometimes provided services for his CAS clients above and beyond what was minimally required of him under his agreements with CAS, and that he subjectively believed he was treating his CAS clients on a similar footing with his other clients. These factors mitigate, but do not excuse, Respondent's misconduct. CAS was engaged in the unauthorized practice of law, and Respondent assisted in that endeavor. Accordingly, we find Respondent violated Rule 5.5(a).

*Engaging in conduct involving dishonesty, fraud, deceit or misrepresentation (Rule 8.4(c)).* The hearing officer did not explicitly address this charge. The Commission urges us to find a violation, arguing in its petition for review that Respondent's relationship with CAS was

dishonest and fraudulent because he was a "partner" in name only and Respondent's role in the representations and share of the fees were not adequately conveyed to clients, all of which lent undeserved credence to the legitimacy of CAS's Indiana operations.

We have explored elsewhere in this opinion, and indeed on several other occasions, the perils of this type of business model. Reviewing this record *de novo*, however, we simply cannot conclude that Respondent's conduct was dishonest or deceitful in the manner contemplated by Rule 8.4(c). Respondent's involvement with CAS unquestionably was ill-advised in many respects, but the evidence shows Respondent's actions were not done with the intent to deceive anyone or to generate quick fees with little work at the expense of his clients. Nor is there any evidence of persons being misled by Respondent's identification as a "partner" on CAS's website. Thus, we find no violation of Rule 8.4(c).

*Engaging in conduct prejudicial to the administration of justice (Rule 8.4(d)).* The hearing officer did not explicitly address this charge. The Commission urges us to find a violation, faulting Respondent for communicating with trial courts by using his own letterhead and identifying himself as either a solo practitioner or by reference to his own firm name "Wall Legal Services." The Commission argues that by doing so, trial courts in cases involving CAS were left unaware that the client was represented by a Florida firm, that Respondent arguably had minimal involvement with his client, and that Respondent was filing documents initially drafted by CAS. However, nowhere in the Commission's petition for review or its reply brief does it explain how Respondent's manner of identifying himself was prejudicial to anyone or anything; and reviewing the record *de novo*, we find no evidence that would support a finding of a Rule 8.4(d) violation. Accordingly, we find in Respondent's favor on this charge.[3]

---

[3] By way of contrast, we found a violation of Rule 8.4(d) in Dilk, a case involving a similar business arrangement between an Indiana attorney and out-of-state entities purporting to offer foreclosure defense assistance, but that case included evidence of specific harm caused to clients and the attorney's continued acceptance of referrals even after the companies were enjoined from further acts constituting the unauthorized practice of law. And while the conditional agreement we approved in Jackson included a finding of a Rule 8.4(d) violation, the stipulated facts in that case reflected particular shortcomings by the CAS-associated attorney that caused specific harm in at least one client representation. There is simply no evidence of a similar nature before us today that would support a finding of a Rule 8.4(d) violation.

*Sanction.* Having found that Respondent assisted CAS in the unauthorized practice of law, assisted CAS in charging an unreasonable fee, and failed to comply with the requirements for splitting a legal fee between two or more attorneys not in the same firm, we consider an appropriate sanction for Respondent's misconduct. The hearing officer recommended that Respondent be suspended for 30 days with automatic reinstatement. The Commission urges us to impose a six-month suspension without automatic reinstatement, while Respondent argues a public reprimand would be sufficient discipline.

We do not take schemes involving the unauthorized practice of law lightly. In Dilk, Joyce, and Fratini, we suspended the respondent attorneys for six months without automatic reinstatement for their roles in similar business practices, and in Jackson we suspended another CAS-associated attorney for 120 days with automatic reinstatement. But the attorney misconduct stipulated or found in those cases was more extensive than the misconduct we have found on the record before us today. Likewise, the facts and circumstances of this case generally are less aggravating, and more mitigating, than those before us in the above-referenced cases. Respondent has no prior discipline, and there is no evidence of particularized harm to any client or judicial proceeding resulting from Respondent's misconduct. CAS referrals were a relatively small part of Respondent's practice, and Respondent's involvement with CAS – while quite ill-advised – nonetheless appears to have been well-intentioned and done without selfish motive. For these reasons, we concur with the hearing officer's recommendation for a 30-day suspension.

## Conclusion

The Court concludes that Respondent violated Professional Conduct Rules 1.5(e), 5.5(a), 8.4(a) and 1.5(a). The Court finds in favor of Respondent on the remaining charges.

For Respondent's professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of 30 days, beginning June 14, 2017. Respondent shall not undertake any new legal matters between service of this opinion and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the period of suspension, provided there are no

other suspensions then in effect, Respondent shall be automatically reinstated to the practice of law, subject to the conditions of Admission and Discipline Rule 23(18)(a). The costs of this proceeding are assessed against Respondent, and the hearing officer appointed in this case is discharged.

Rush, C.J., and Rucker, David, and Massa, JJ., concur.

Slaughter, J., dissents from the finding that Respondent violated Rule 5.5(a), but concurs with the remaining findings and with the sanction imposed.