RESPONDENT PRO SE
Douglas L. Krasnoff
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Director
Angie Ordway, Staff Attorney
Indianapolis, Indiana

FILED

Jul 20 2017, 2:29 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 49S00-1308-DI-517

IN THE MATTER OF:

DOUGLAS L. KRASNOFF,

*Respondent.*

Attorney Discipline Action
Hearing Officer Timothy W. Oakes.

**July 20, 2017**

**Per Curiam.**

We find that Respondent, Douglas Krasnoff, committed attorney misconduct by practicing law while suspended, charging an unreasonable fee, improperly modifying a fee agreement, and failing to respond to the Commission's demand for information. For this misconduct, we conclude that Respondent should be suspended for at least 180 days without automatic reinstatement.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. Respondent's 1997 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

## Procedural Background and Facts

The Commission filed a two-count "Verified Complaint for Disciplinary Action" against Respondent on August 8, 2013, and we appointed a hearing officer. Respondent's answer was untimely, prompting the Commission to seek and the hearing officer to grant judgment on the complaint. In an order issued September 2, 2014, we reversed the judgment on the complaint and referred the case back to the hearing officer for further proceedings. A hearing was held over several dates in March 2016, and the hearing officer issued his report on January 24, 2017.

*Count 1*. Respondent was suspended in Indiana for CLE noncompliance, effective May 12, 2002, and thereafter the United States District Court for the Southern District of Indiana ("District Court") reciprocally suspended Respondent. Respondent was reinstated in both jurisdictions effective December 31, 2002.

In November 2001, "Client" retained Respondent to represent him in pursuing a claim against his employer, General Motors Corporation ("First GM Case"). The fee agreement provided that Client pay Respondent $10,000 as a retainer fee/fixed fee. The agreement also called for Client to pay Respondent 40% of any recovery as a "contingent fee bonus," to which the retainer fee/fixed fee would be credited. Client paid Respondent $6,000. When the case settled in March 2006 for $3,000, Respondent kept the entire amount (for a total of $9,000), leaving Client owing $1,000 to Respondent.

In April 2002, Client retained Respondent to represent him in a second claim against GM under the Family and Medical Leave Act ("Second GM Case"). The fee agreement provided that Client pay Respondent $5,000 as a "retainer fee/fixed fee," which Client paid in full. The agreement also called for Client to pay Respondent 33% or 40% of any recovery (depending on whether the case went to trial) as a "contingent fee bonus," to which the retainer fee/fixed fee would be credited. Respondent filed suit in state court on behalf of Client on October 2, 2002, in violation of his state CLE suspension. The case was removed to the District Court in November 2002. On December 12, 2002, Respondent filed two motions in the District Court, in violation of his federal reciprocal suspension.

In addition to the amounts described above, Respondent charged Client $10,000 to take an "appeal from a Magistrate Order to the District Judge" ("Appeal Fee"). Respondent also charged Client $8,000 "to add claims to his lawsuit" ("Additional Fee"), but Respondent only belatedly attempted to add these claims to the lawsuit, was denied leave to add them, and eventually released these claims against Client's wishes.

After the Second GM Case settled for $30,000 in 2007, Respondent had Client sign a "Settlement Agreement" that provided Respondent would receive $20,000 in attorney fees and Client would receive $10,000. The $5,000 retainer Client had paid was not credited to him. Respondent did not advise Client in writing of the desirability of seeking the advice of independent counsel regarding the modification or give Client a reasonable opportunity to do so before Client signed the Settlement Agreement.

Respondent received $20,000 from GM[1] according to the Settlement Agreement, bringing the total fees he collected for the representation in the Second GM Case to at least $43,000. Client, however, has never received the remaining $10,000 due under the Settlement Agreement.

*Count 2*. Respondent at multiple stages failed to cooperate with the Commission in its investigation of a grievance filed by Client, resulting in the initiation of two separate show cause proceedings. Both of those show cause proceedings eventually were resolved after Respondent belatedly complied.

Following a hearing, the hearing officer issued a report finding against Respondent on some charges and against the Commission on other charges. The hearing officer also made conflicting entries on one charge. Both Respondent and the Commission have sought our review of the hearing officer's findings and conclusions.

---

[1] By this point in time, Allison Transmission had been sold by GM and had assumed liability for the Second GM Case. For ease of reference, we refer to these entities in this opinion collectively as GM.

**Discussion**

The Commission carries the burden of proof to demonstrate attorney misconduct by clear and convincing evidence. *See* Ind. Admission and Discipline Rule 23(14)(i) (2016). We review *de novo* all matters presented to the Court, including review not only of the hearing officer's report but also of the entire record. *See* Matter of Thomas, 30 N.E.3d 704, 708 (Ind. 2015). The hearing officer's findings receive emphasis due to the unique opportunity for direct observation of witnesses, but this Court reserves the right to make the ultimate determination.

*Count 1 charges.* The Commission alleged, the hearing officer found, and Respondent admits a violation of Indiana Professional Conduct Rule 5.5(a) for having practiced law while his state and federal suspensions were in effect. Accordingly, we find Respondent violated Rule 5.5(a).

The Commission charged a violation of Professional Conduct Rule 1.5(c), premised on Respondent's alleged failure to provide Client with a written statement showing the remittance due Client and the method of its determination following the conclusion of the Second GM Case. The relevant finding and conclusion made by the hearing officer are in conflict. Both parties have sought our review, but their briefs offer little assistance in resolving this question. Reviewing *de novo* the record before us, we find the Commission has failed to clearly and convincingly prove this charge.

The Commission further alleged Respondent violated Professional Conduct Rule 1.5(a) by charging an unreasonable fee in several respects. The hearing officer found a violation in part, concluding that the Appeal Fee was unreasonable but the Additional Fee was not unreasonable. Both parties have sought review of these conclusions. We agree with the hearing officer's conclusion that the Appeal Fee was unreasonable and accordingly find that Respondent violated Rule 1.5(a).[2] The action taken by Respondent was not an "appeal" in the traditional sense but rather an objection to a magistrate's pretrial order lodged with the district judge pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, and the parties accordingly

---

[2] Having so found, we need not decide whether the Additional Fee also was unreasonable.

4

dispute whether this work was encompassed within the scope of the original fee agreement. But however this work is characterized, its ultimate purpose was to challenge a pretrial order in the Second GM Case requiring Client to provide medical records that already had been provided by Client to GM in the First GM Case. In other words, Respondent charged Client $10,000 to try to avoid giving GM materials that Respondent knew GM already had.

Finally in Count 1, the Commission alleged, and the hearing officer found, that Respondent violated Professional Conduct Rule 1.8(a) by renegotiating his fee agreement with Client on terms more advantageous to Respondent without adhering to the safeguards required by the rule, including the need to advise the client in writing of the desirability of seeking independent counsel and to give the client a reasonable opportunity to do so. Respondent disputes the notion that the renegotiated terms disadvantaged Client, arguing that a settlement was better for Client than losing the case outright. The relevant inquiry, though, is not whether some recovery is better than no recovery, but whether the terms of a renegotiated fee agreement are more advantageous to the attorney than the terms of the original fee agreement. Moreover, the original fee agreement between Respondent and Client expressly contemplated the possibility of a settlement. Application of the terms of that agreement to the $30,000 settlement amount would have given Respondent about $10,000 and Client about $20,000 of that amount, and additionally would have credited Client with his $5,000 retainer. Instead, the renegotiated terms essentially flipped these sums, giving Client $10,000 and Respondent $20,000 of the settlement amount, and failed to credit Client with his $5,000 retainer.[3]

Respondent also argues "time was of the essence" in settlement discussions with GM and therefore his failure to comply with the requirements of Rule 1.8(a) should be excused. Respondent cites only his own self-serving testimony in support of his contention that time was of the essence, which the hearing officer does not appear to have credited. Regardless, Rule

---

[3] We observe that Respondent not only renegotiated his fee to the disadvantage of Client, but he compounded this harm by asserting a lien against Client's reduced share of the settlement and only nominally (and unsuccessfully) attempting to collect Client's share from GM. GM asked Respondent to provide a W-9 form for himself and a W-4 form for Client in order to process the settlement checks. Respondent promptly provided the W-9 form and received his $20,000 payment from GM, but made little or no effort to obtain a W-4 form from Client to provide to GM. Instead, after collecting his own share of the settlement, Respondent indicated he would file suit against GM to collect Client's portion. However, Respondent took no further action on the matter.

5

1.8(a) does not provide the type of exception Respondent appears to seek, and we decline to carve out such an exception here. Accordingly, we find Respondent violated Rule 1.8(a).

*Count 2 charge*. The Commission alleged Respondent violated Professional Conduct Rule 8.1(b) by failing to timely respond to the Commission's demand for information and subpoena duces tecum issued in connection with the Commission's investigation of Client's grievance. Respondent's noncooperation spawned two separate show cause proceedings, both of which eventually were dismissed when Respondent belatedly complied.

Respondent argued earlier in these proceedings that his alleged Rule 8.1(b) violation was *res judicata*. The hearing officer similarly concluded this charge was "moot" in light of the resolution of the show cause proceedings. However, prosecution of a Rule 8.1(b) violation is not rendered either *res judicata* or moot by the initiation and resolution of show cause proceedings. Such proceedings are coercive in nature and are focused exclusively on securing the attorney's cooperation with an investigation. With limited exceptions not applicable here, show cause proceedings terminate once the attorney belatedly complies. *See* Admis. Disc. R. 23(10.1). Prosecution of attorney misconduct, on the other hand, includes examination of a range of considerations bearing on the attorney's fitness to practice. It would be a perverse result to exclude noncooperation from that analysis merely because the noncooperation was severe enough to necessitate the Court's coercive intervention prior to final discipline. Accordingly, we find that Respondent violated Rule 8.1(b) as charged by the Commission.

*Sanction*. Our analysis of appropriate discipline includes consideration of the nature of the misconduct, the duties violated by the respondent, any resulting or potential harm, the respondent's state of mind, our duty to preserve the integrity of the profession, the risk to the public should we allow the respondent to continue in practice, and matters in aggravation and mitigation. *See* Matter of Powell, 953 N.E.2d 1060, 1064 (Ind. 2011).

Describing Respondent as "his own worst enemy," the hearing officer cited Respondent's prior suspensions, his pattern of combativeness toward the Commission, and his lack of insight into his misconduct as factors in aggravation. (HO's Report at 21-24). Respondent's

6

representation of Client included actions taken in disregard of suspension orders issued by this Court and the District Court. Further, Respondent used his representation of Client as a vehicle to extract fees at every opportunity, and he did so to Client's detriment. Respondent charged Client $10,000 for the First GM Case, which settled for $3,000 and left Client indebted to Respondent. In the Second GM Case, Respondent charged a $5,000 retainer which he promised to (but never did) credit against an eventual recovery; charged another $8,000 for work that was never carried out (and under the circumstances, likely could not have been carried out); charged another $10,000 to resist giving GM discovery that GM already had; negotiated a settlement agreement that effectively doubled the contingent fee previously agreed upon by Respondent and Client; and then, after collecting his own share of the settlement from GM, made only token efforts to collect Respondent's share. When all is said and done, between the two cases Respondent collected over $50,000 for himself and nothing for Client, and Respondent claims Client still owes him money.

Similar cases involving clearly exploitative overreaching such as this have resulted in suspensions ranging from several months to one year, either with or without automatic reinstatement. *See* Powell, 953 N.E.2d at 1065; Matter of Hefron, 771 N.E.2d 1157, 1163 (Ind. 2002); Matter of Gerard, 634 N.E.2d 51, 54 (Ind. 1994). We conclude that Respondent's exploitation of Client warrants a similar suspension. Respondent's disregard of court orders suspending him from the practice of law, his obstreperousness during disciplinary proceedings, and his lack of insight into his misconduct additionally persuade us that Respondent should not be automatically reinstated following his suspension but instead should have to undergo the rigorous reinstatement process in order to prove his fitness to resume practice.

**Conclusion**

The Court concludes that Respondent violated Professional Conduct Rules 1.5(a), 1.8(a), 5.5(a), and 8.1(b). For Respondent's professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than 180 days, without automatic reinstatement, beginning September 1, 2017. Respondent shall not undertake any new legal matters between service of this opinion and the effective date of the suspension, and Respondent

7

shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(18). The costs of this proceeding are assessed against Respondent, and the hearing officer appointed in this case is discharged.

All Justices concur.