141 Nev., Advance Opinion 43

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF DISCIPLINE OF HARDEEP SULL, BAR NO. 12108. | No. 86781 |



**FILED**

AUG 28 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a disciplinary board hearing panel's order dismissing a complaint against an attorney.

*Reversed; attorney reprimanded.*

Daniel M. Hooge, Bar Counsel, and R. Kait Flocchini, Assistant Bar Counsel, Reno,
for State Bar of Nevada.

Richard Harris Law Firm and David A. Clark, Las Vegas,
for Respondent Hardeep Sull.

McLetchie Law and Lisa A. Rasmussen, Las Vegas; Randolph M. Fiedler, Las Vegas,
for Amicus Curiae Nevada Attorneys for Criminal Justice.

---

BEFORE THE SUPREME COURT, EN BANC.

## OPINION

By the Court, BELL, J.:

In this matter, we consider whether attorney Hardeep Sull violated the Nevada Rules of Professional Conduct (RPC) concerning the safekeeping of client funds and the duties owed to a client when terminating

25-37659

representation. Specifically, the rules require attorneys to deposit "[a]ll funds received or held for the benefit of clients . . . , including advances for costs and expenses," into a designated client trust account, "to be withdrawn by the lawyer only as fees are earned or expenses incurred." RPC 1.15(a), (c). We conclude that Sull violated RPC 1.15 when she charged a flat fee for a limited scope representation but failed to deposit that fee into a client trust account. We further conclude that Sull violated RPC 1.16(d), which requires an attorney to "refund[ ] any advance payment of fee[s] or expense[s] that has not been earned or incurred" when the client terminates that representation. Because the hearing panel erred when it concluded that Sull did not violate either of these rules, we reverse the hearing panel's order dismissing the disciplinary charges against Sull. Based on the clear evidence supporting violations of RPC 1.15 and RPC 1.16, and considering the circumstances, we conclude that a reprimand serves the purpose of attorney discipline.[1]

## BACKGROUND

Sull has been licensed to practice law in Nevada since 2010 and has no prior discipline. Sull's practice primarily consists of immigration matters. In June 2021, a preexisting client retained Sull to prepare and file an E-2 visa application. For this representation, the client agreed to pay Sull a flat fee of $15,000, plus a $750 client file fee. The fee agreement

---

[1]In a unanimous opinion, a three-justice panel of this court reversed the hearing panel's decision to dismiss the disciplinary charges against Sull and issued a reprimand. *In re Discipline of Sull*, 140 Nev., Adv. Op. 54, 554 P.3d 226 (2024). Sull petitioned for rehearing, which the panel denied. Sull then filed the instant petition for en banc reconsideration. Cause appearing, the petition for en banc reconsideration is granted, and this court's previous opinion in this matter is withdrawn.

provided that, in the event of early termination, Sull's "time completed on the matter will be billed at an hourly rate" of $395 per hour and that Sull would "refund any unused portion of the costs and/or expenses." The client wired the full $15,000 to Sull's firm's operating account. Within a month, Sull had withdrawn all of those funds without attributing the withdrawals to the E-2 visa matter. At no time did Sull place the client's funds into the firm's client trust account.

In December 2021, the client informed Sull that he did not want to move forward with the visa application. As a result, Sull never filed the application. The next month, the client requested that Sull provide an accounting of work performed on the matter and a refund of any unearned fees. Sull promised to provide the requested accounting within a month but failed to do so. The client continued to request an accounting for several months and eventually filed a grievance with the State Bar. After the parties participated in a fee dispute mediation, Sull provided the client with an accounting. In early 2023, Sull refunded the client $3,500.

The State Bar filed a disciplinary complaint against Sull, alleging that Sull violated RPC 1.15 (safekeeping property) by failing to deposit the client's funds into a client trust account and RPC 1.16 (declining or terminating representation) by failing to provide the client with an accounting or a refund of unearned fees when the client terminated the representation. The hearing panel unanimously concluded that Sull (1) did not violate RPC 1.15 because the $15,000 was a flat fee that did not have to be deposited into a client trust account and (2) did not violate RPC 1.16 because the client did not terminate the representation. The panel dismissed the complaint. The State Bar appeals, arguing that the panel erred in concluding that Sull did not violate RPC 1.15 and RPC 1.16.

## DISCUSSION

"Our review of the panel's findings of fact is deferential . . . so long as they are not clearly erroneous and are supported by substantial evidence." *In re Discipline of Colin*, 135 Nev. 325, 330, 448 P.3d 556, 560 (2019) (internal citation omitted). We review the panel's conclusions of law, including "whether the factual findings establish an RPC violation," de novo. *Id.* (discussing SCR 105(3)(b)).

*Advanced fees must be deposited into a client trust account, and an attorney may only withdraw the fees if they have been earned*

The Nevada Rules of Professional Conduct require that "[a]ll funds received or held for the benefit of clients by a lawyer . . . shall be deposited in [the lawyer's] trust account." RPC 1.15(a); *see also* SCR 78(1)(a) (requiring attorneys to "deposit all funds held in trust in this jurisdiction" into a trust account). "All funds held in trust" includes fees paid in advance of the lawyer providing the agreed-upon services. Our rules explain that "[l]egal fees and expenses that have been paid in advance" may "be withdrawn [from the trust account] by the lawyer only as fees are earned or expenses incurred." RPC 1.15(c). The rules are clear that fees paid in advance may only be withdrawn as the fees are earned, and fees paid to an attorney are not earned until the attorney performs a service for the client. *See In re Sather*, 3 P.3d 403, 405 (Colo. 2000) ("[A]n attorney earns fees by conferring a benefit on or performing a legal service for the client.").

Although the rules allow a lawyer to charge a fixed or "flat" rate for legal services, the lawyer must still perform work to earn the fee. *See* RPC 1.5(a)(8) (permitting a lawyer to charge a fixed fee for services). An attorney cannot avoid accounting for work performed by labeling the fee as a "flat fee." *See* 7A C.J.S. *Attorney & Client* § 412 (May 2025) (explaining that advanced fees paid "to secure the performance of future legal services

[are] not earned unless and until the lawyer performs the services regardless of how the lawyer has characterized the fee in the retainer agreement"). "The client must be in a position to understand what the lawyer will do for the agreed upon fees, and, of equal importance, what the lawyer will not do. Simply put, the client must know what [the client] bargained for." *In re Seare*, 493 B.R. 158, 206 (Bankr. D. Nev. 2013) (emphasis omitted), *as corrected* (Apr. 10, 2013), *aff'd*, 515 B.R. 599 (B.A.P. 9th Cir. 2014). This does not mean that a lawyer must necessarily keep track of time spent on a particular case; the inquiry is when the lawyer has performed the expected work to earn the fee according to the lawyer's agreement with the client.

The American Bar Association's recent opinion addressing the proper treatment of flat or fixed fees paid before an attorney earns those fees is instructive. "If a flat or fixed fee is paid by the client in advance of the lawyer performing the legal work, the fees are an advance. Use of the term 'flat fee' or 'fixed fee' does not transform [an] arrangement into a fee that is 'earned when paid.'" ABA Comm. on Ethics & Pro. Resp., Formal Op. 505, at *4 (2023). Because fees paid in advance of legal services being performed have not yet been earned, those fees cannot be earned upon receipt. When a lawyer receives an advance of fees, "that fee must be placed in a Rule 1.15-compliant trust account, to be disbursed to the lawyer only after the fee has been earned." *Id.*

Accordingly, fees paid in advance must be placed into the lawyer's trust account until the lawyer earns the fees by performing the agreed-upon work. *See, e.g.*, RPC 1.16(d) (requiring attorneys to "refund[ ] any advance payment of fee or expense that has not been earned or incurred" upon termination of the representation). So long as there is a

(O) 1947A

possibility that fees are unearned and subject to a refund, fees "must be held in trust to ensure their availability." Alec Rothrock, *The Forgotten Flat Fee: Whose Money Is It and Where Should It Be Deposited?* 1 Fla. Coastal L.J. 293, 347-48 (1999).

*The fee agreement must explain how the attorney will earn advanced fees*

When an attorney collects a fixed or flat fee for services to be rendered in the future, such an advance may be earned by the attorney in one of two ways. Robert L. Rossi, 1 *Attorneys' Fees* § 1:2 (2025). The first way is to treat the advanced fees as a security retainer to be earned and drawn from on an hourly basis. *Id.*; *see also* Douglas R. Richmond, *Understanding Retainers and Flat Fees*, 34 J. Legal Prof. 113, 117 (2009) (explaining that, typically, an attorney "who collects a security retainer draws it down pursuant to an agreed hourly rate as the [attorney] earns the fees by performing legal services for the client").

The second way is to treat the fees as an advanced retainer to be earned upon completing a specified goal or drawn from at the completion of specified tasks. *See* Rothrock, *supra*, at 355-56 (suggesting that attorneys set forth "reasonable milestones when their interest in portions of the [advanced] fee becomes fixed" in the fee agreement so the attorney may withdraw funds when earned). For example, once the attorney reaches a certain stage of representation or completes a designated task, the attorney could transfer the agreed-upon portion of funds for that task out of the trust account. An attorney charging a paid-in-advance flat fee for representing a client in a criminal matter may, for example, specify in the fee agreement that the funds will be deemed fully earned by the attorney after sentencing or dismissal of the charges against the client. Alternatively, the agreement could set forth that a specified portion of the fees will be earned after the

preliminary hearing, a specified portion will be earned for trial preparation on the first day of trial, and the balance will be earned after sentencing or dismissal. "Of course, 'extreme "front-loading" of payment milestones in the context of the anticipated length and complexity of the representation' may not be reasonable." ABA Formal Op. 505, at *5 (quoting *In re Mance*, 980 A.2d 1196, 1204-05 (D.C. 2009)); *see also* RPC 1.5(a) (discussing factors for determining the reasonableness of a fee and prohibiting an attorney from charging an unreasonable fee).

A prudent attorney who accepts advanced fees should spell out in the fee agreement the purpose of the representation and inform the client "at what intervals the lawyer may withdraw a portion of the fee, and at what intervals the lawyer will render an accounting." *Iowa Sup. Ct. Bd. of Pro. Ethics & Conduct v. Apland*, 577 N.W.2d 50, 59 (Iowa 1998). When the fee agreement specifies when and how the attorney will earn the fee, it is easier to resolve any ambiguities or confusion as to what portion, if any, of the funds are unearned and therefore must be refunded in the event the representation is terminated early under RPC 1.16(d). Regardless of whether the fee is earned at the conclusion of the matter or in some percentage based on benchmarks, what is important is that the client consents to the fee and is aware of how the fee will be earned. *See In re Discipline of Bowen*, 500 P.3d 788, 796 (Utah 2021) ("Flat fee agreements must . . . explain *when* the flat fees are to be earned and *why* those fees are reasonable . . . .").

*Because the advanced fees here were not earned, Sull violated RPC 1.15 by failing to deposit the client's funds in her trust account*

When the client retained Sull for the E-2 visa matter, the client agreed to pay Sull a flat fee of $15,000 in advance. Sull agreed to keep the client informed about how Sull was earning the advanced fees. Specifically, the fee agreement provided that the $15,000 fee was for "legal services to be rendered" and indicated that Sull would send billing statements to the client explaining how any deposited fees would "be applied towards the balance of the legal services rendered." By the terms of the agreement, the client's fees in this matter were paid in advance and were to be earned by Sull providing services in the future. The agreement further provided that, in the event of termination, Sull's work "on the matter will be billed at an hourly rate" of $395 per hour. While the language of the fee agreement does not clearly delineate whether the fee was to be drawn down on an hourly basis or when Sull completed specified tasks, the agreement makes clear that the fees charged were an advance held for the client's benefit.

Consistent with RPC 1.15(c), those fees should have been deposited in a client trust account and withdrawn by Sull only as fees were earned or expenses incurred. Sull instead treated the funds as "earned upon receipt," placing the client's funds directly into her operating account without first performing work to earn those funds. By doing so, Sull violated RPC 1.15. We cannot agree with the hearing panel's contrary conclusion.

*The client terminated Sull's representation before she completed the task for which she was retained*

The Nevada Rules of Professional Conduct provide that, "[u]pon termination of representation, a lawyer shall . . . surrender[ ] papers and property to which the client is entitled and refund[ ] any advance payment

SUPREME COURT
OF
NEVADA

(0) 1947A

of fee or expense that has not been earned or incurred." RPC 1.16(d). The question here is whether the client terminated the representation.

Sull's client had previously retained Sull for two other matters, one of which is still pending. Each matter was distinct and had its own fee agreement. *See* RPC 1.2(c) ("A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent."). The third matter was the E-2 visa application, which formed the basis of the State Bar's complaint. The record establishes that the client terminated the representation for the E-2 visa after Sull had completed some work but before Sull filed the application. Because the E-2 visa was a separate representation from the other matters, we conclude that the client terminated the representation, triggering RPC 1.16. The fact that Sull remained counsel of record for the client on an unrelated matter has no bearing on whether the client terminated Sull's representation for the E-2 visa. The record fails to support the hearing panel's finding that the client had not terminated the representation.

Sull delayed providing the client with an accounting of work performed and a refund of unearned fees for several months after the representation for the E-2 visa terminated. The record demonstrates by clear and convincing evidence that Sull violated the duty to "surrender[ ] papers and property to which the client is entitled and refund[ ] any advance payment of fee or expense that has not been earned or incurred." RPC 1.16(d); *see also In re Discipline of Drakulich*, 111 Nev. 1556, 1566, 908 P.2d 709, 715 (1995) (recognizing the burden of proof in a disciplinary matter).

*A reprimand is appropriate discipline for Sull's violations*

In determining the appropriate discipline, we weigh four factors: "the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors." *In re Discipline of Lerner*, 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008). Although the hearing panel's recommendation is persuasive, we determine the appropriate discipline de novo. *See In re Discipline of Schaefer*, 117 Nev. 496, 515, 25 P.3d 191, 204 (2001); SCR 105(3)(b).

Based on the record provided, we conclude that the State Bar proved by clear and convincing evidence that Sull's actions caused actual or potential injury to the client by depriving the client of access to and use of the client's own funds for over one year. *See In re Watt*, 717 N.E.2d 246, 248-49 (Mass. 1999) ("Deprivation arises when an attorney's intentional use of a client's funds results in the unavailability of the client's funds after they have become due, and may expose the client to a risk of harm, even if no harm actually occurs."). The record also supports that Sull negligently violated RPC 1.15 and knowingly violated RPC 1.16. Because the most serious misconduct was the knowing violation of duties owed when the client terminated the representation, the baseline sanction, before considering aggravating or mitigating circumstances, is suspension. *See* Standards for Imposing Lawyer Sanctions, *Compendium of Professional Responsibility Rules and Standards*, at Standard 7.2 (Am. Bar Ass'n 2023) ("Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.").

The record further demonstrates substantial evidence of one aggravating circumstance (substantial experience in the practice of law) and five mitigating circumstances (absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems, cooperative attitude toward proceedings, and character and reputation). *See* SCR 102.5 (listing "[a]ggravating and mitigating circumstances [which] may be considered in deciding what sanction to impose"). Given that this is Sull's first discipline and that the mitigating circumstances significantly outweigh the one aggravating circumstance, we conclude that a downward deviation from the baseline sanction is appropriate. Considering all of the factors, we conclude that a reprimand serves the purpose of attorney discipline. *See In re Discipline of Arabia*, 137 Nev. 568, 571, 495 P.3d 1103, 1109 (2021) (recognizing that the purpose of attorney discipline is to protect the public, the courts, and the legal profession).

## *CONCLUSION*

Sull violated the Nevada Rules of Professional Conduct by mishandling client funds and by failing to account for and refund client funds after the client terminated her representation. Given the clear evidence of these violations, we reverse the hearing panel's order dismissing the disciplinary charges against Sull. Considering the aggravating and mitigating circumstances, particularly that Sull has had no prior attorney discipline, we conclude that a reprimand is sufficient to serve the purpose of attorney discipline.

Accordingly, we reprimand attorney Hardeep Sull for violating RPC 1.15 (safekeeping property) and RPC 1.16 (declining or terminating representation). Sull shall pay the costs of the disciplinary proceedings,

including $1,500 under SCR 120, within 30 days after the State Bar provides an invoice for those costs. The State Bar shall comply with SCR 121.1.

_____, J.
Bell

We concur:

_____, C.J.
Herndon

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Lee

SUPREME COURT
OF
NEVADA

(O) 1947A

STIGLICH, J., dissenting:

Flat fee client agreements are used routinely by many attorneys to provide a particular legal service for a specified rate. In this opinion, the court reshapes how such agreements are treated in a significant way that will affect many practitioners, and the opinion thus presents a significant public policy issue. As the opinion restricts the flexibility that clients and attorneys have in structuring client agreements in a way at odds with practice in most jurisdictions, I would render a different disposition and therefore respectfully dissent.

While the terminology used varies, "[r]etainer agreements fall into three general categories: (1) classic retainers; (2) security retainers; and (3) advance payment retainers." *Barron v. Countryman*, 432 F.3d 590, 597 (5th Cir. 2005); *accord, e.g., In re Connelly*, 55 P.3d 756, 762 n.7 (Ariz. 2002); *Dowling v. Chi. Options Assocs., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007); *In re Disciplinary Action Against Hann*, 819 N.W.2d 498, 506 (N.D. 2012). A classic or engagement retainer secures an attorney's availability for a specific time or matter. *Bd. of Pro. Resp. v. Reguli*, 489 S.W.3d 408, 421 (Tenn. 2015). This payment will be earned on receipt, *id.*—such a retainer is not at issue here. A security retainer in turn is a deposit of client funds to pay for future legal services. *Dowling*, 875 N.E.2d at 1018. These funds must be held in a client trust account, apart from the attorney's property, and are debited as they are earned. *Id.* And an advance payment retainer is a present payment for specified legal services to be provided in the future. *Reguli*, 489 S.W.3d at 422. An advance payment retainer paid as a flat fee is considered to be earned by the attorney when it is paid and therefore should not be deposited in a client trust account. *In re Kendall*, 804 N.E.2d 1152, 1157 (Ind. 2004).

The court today thus neglects an element of complexity in concluding that a flat fee can only be a deposit of a client's funds, drawn down as fees are earned. Undoubtedly, this is a common form of an advance payment. Advance payments may take another shape, however, should the attorney and the client so agree. *See id.* ("The majority of jurisdictions have held that flat fees may, with the consent of the client, be considered to be earned upon receipt and therefore not required to be placed in a trust account."); Restatement (Third) of the Law Governing Lawyers, § 38 cmt. g ("A client and lawyer might also agree that an advance payment is neither a deposit nor an engagement retainer, but a lump-sum fee constituting complete payment for the lawyer's services. Again, the lawyer must adequately explain this to the client."); Douglas R. Richmond, *Understanding Retainers and Flat Fees*, 34 J. Legal Prof. 113, 132 (2009) ("It is said to be the majority rule that lawyers may, with client consent—typically confirmed in writing—treat flat fees as earned upon receipt."). The unfortunate consequence of this opinion is to foreclose the viability of advance payment retainers as an unethical payment structure.

In concluding that flat fees may only be security retainers and not advance payment retainers, the court deprives practitioners and clients of the flexibility of a valid means of structuring client agreements. *Cf. In re Conduct of Balocca*, 151 P.3d 154, 159 (Or. 2007) (holding that an attorney need not deposit a fee payment into a trust account when the attorney and client have agreed in writing that the fees are earned upon receipt); *Att'y Grievance Comm'n v. Jones*, 297 A.3d 1172, 1206 (Md. 2023) (providing that courts should scrutinize the client agreement and all other surrounding circumstances to determine whether the client understood the agreement that fees were to be treated as earned upon receipt); *Grievance Adm'r, Att'y*

*Grievance Comm'n v. Cooper*, 757 N.W.2d 867, 867 (Mich. 2008) (providing that fees may be treated as earned upon receipt where the client agreement unambiguously communicates that the fee was to be incurred upon execution of the agreement). In many instances, a flat fee earned upon receipt will best serve the needs of both parties to the client agreement. *See Connolly*, 151 P.3d at 762 (observing that nonrefundable flat fee agreements reflect negotiated risk-sharing between the attorney and client). Further, this opinion will cut the ground from beneath the feet of many attorneys who have relied on flat fees in a way—widely accepted in other jurisdictions—that the court now declares unethical. *See* Richmond, 34 J. Legal Prof. at 132 (noting that the rule embraced by the opinion is followed by a minority of jurisdictions). The opinion does not grapple with the consequences this ruling will have for other attorneys.

Rather than categorically foreclosing advance payment retainers, the court today could instead have provided guidance for attorneys and clients to more robustly safeguard that clients understand whether a flat fee is intended as a deposit to be drawn down or a complete payment for future work. *See Jones*, 297 A.3d at 1206 (discussing considerations for courts to review, and thus guidance for attorneys to follow, to ensure clients fully understand the nature of a flat fee payment). Indeed, other courts have recognized that parties with eyes open and informed consent could elect to structure payments as an advance payment retainer. *See, e.g., In re Mance*, 980 A.2d 1196, 1206 (D.C. 2009) ("Although the default rule is that an attorney must hold flat fees in a client trust or escrow account until earned, we note that an attorney may obtain informed consent from the client to deposit all of the money in the lawyer's operating account or to deposit some of the money in the lawyer's operating account

as it is earned, per their agreement."). Because the effect of this opinion is to deviate from majority practice with uncertain consequences for other practitioners and to deprive clients and attorneys of valuable flexibility, I respectfully dissent.

_____, J.
Stiglich